618 A.2d 972

COMMONWEALTH of Pennsylvania, Appellee,

v.

Tracy Eugene DENNIS, Appellant.

Superior Court of Pennsylvania.

Argued July 29, 1992.

Filed Dec. 8, 1992.

Gary B. Zimmerman, Pittsburgh, for appellant.

Mary B. Seiverling, Deputy Atty. Gen., Harrisburg, for Com., appellee.

Before TAMILIA, HUDOCK and HESTER, JJ.

HUDOCK, Judge:

This is an appeal from the judgment of sentence imposed on Appellant following conviction on two counts of corrupt organizations,[1] four counts of delivery of a controlled substance (methamphetamine),[2] and one count of criminal conspiracy.[3] Post-trial motions were filed and denied, and Appellant was sentenced to seven and one-half (7½) to twenty (20) years in prison on the corrupt organizations conviction, and concurrent sentences of two and one-half (2½) years on three of the controlled substance convictions, and a concurrent sentence of five (5) to ten (10) years on the criminal conspiracy conviction. This appeal followed. We affirm.

The facts involved in this case concern a series of three-way transactions for the sale of methamphetamine which involved individuals in Pennsylvania, New Jersey and Florida. The testimony at trial revealed that over a period of time from 1981 to 1989, Appellant was involved in a methamphetamine distribution scheme involving several people, including Craig

1. 18 Pa.C.S. § 911 (Purdon 1983 & Supp.1992).
2. 35 Pa.S. § 780–113(a)(30) (Purdon Supp.1992).
3. 18 Pa.C.S. § 903 (Purdon 1983).

Mahlon, Kevin Reilly, and William Bell. Both Mahlon, and, later, Reilly received the drugs either in the Pocono Mountains region of Pennsylvania or in New Jersey. Mahlon left the operation and substituted Reilly, who moved to Florida in 1986. While continuing to be involved in this same scheme of distribution, due to Reilly's move to Florida, the methamphetamine was sent by mail or U.P.S. to Florida and then sent by Reilly from Florida to William Bell in Clearfield County, Pennsylvania.[4] Bell then sold the drugs to individuals who worked for him.

As part of the evidence submitted at trial, the Commonwealth offered the results of a search of Appellant's residence which took place pursuant to a New Jersey search warrant on October 6, 1986. During this search, $218,000 in U.S. currency was found in a safe in Appellant's basement.

Appellant raises the following issues in his appeal:

I. The evidence is insufficient to sustain Appellant's conviction for violating 18 Pa.C.S. Section 911(B)(3) Corrupt Organization and 18 Pa.C.S. Section 911(B)(4) Conspiracy, Corrupt Organizations in that the evidence failed to prove the existence of a separate enterprise apart from the drug conspiracy activity.

II. The evidence is insufficient to maintain Appellant's conviction on counts V, VI and VII, as the crimes charged were committed outside the territorial limits of Pennsylvania.

III. The evidence was insufficient to convict Appellant with delivery of Methamphetamine, 35 Pa.C.S. 780–113(A)(30), because the proof was not reasonably certain as to date and time so that the double jeopardy requirements of the Pennsylvania and United States Constitutions were not satisfied. The charge itself failed to adequately notify Appellant of the crime and the lower court created a new crime without the approval of the legislature.

IV. The fruits of an unlawful search by New Jersey officials were erroneously admitted into evidence at the trial of

4. As shall be discussed *infra,* on one occasion Bell went to New Jersey to receive the drugs directly from Appellant.

this case as the search was conducted on the basis of a search warrant issued without probable cause.

Appellant's Brief at 4.

 Appellant's first issue concerns the sufficiency of the evidence presented at trial. In reviewing the sufficiency of the evidence, we must examine the evidence in the light most favorable to the Commonwealth as verdict winner and, in light of this and the permissible inferences which may be drawn therefrom, whether all of the elements of the crime have been established beyond a reasonable doubt. *Commonwealth v. Griscavage*, 512 Pa. 540, 517 A.2d 1256 (1986).

18 Pa.C.S. § 911(b) reads in pertinent part:

(3) It shall be unlawful for any person employed by or associated with any enterprise to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

(4) It shall be unlawful for any person to conspire to violate any of the provisions of paragraphs (1), (2) or (3) of this subsection.

18 Pa.C.S. § 911(h) reads in pertinent part:

(1) **"Racketeering activity"** means:

(ii) any offense indictable under section 13 of the act of April 14, 1972 (P.L. 233, No. 64) known as The Controlled Substance, Drug, Device and Cosmetic Act [35 P.S. § 780–101 et seq.] (relating to the sale and dispensing of narcotic drugs);

(iii) any conspiracy to commit any of the offenses set forth in subparagraphs (i) and (ii) of this paragraph;

\* \* \* \* \* \*

(3) **"Enterprise"** means any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity, engaged in commerce.

(4) **"Pattern of racketeering activity"** refers to a course of conduct requiring two or more acts of racketeering activity one of which occurred after the effective date of this section.

Appellant does not dispute the presence of a pattern of racketeering activity, but rather, argues that the Commonwealth failed to prove the existence of an "enterprise", as defined by the corrupt organizations statute, separate and apart from the drug conspiracy activity. We disagree. As we stated in *Commonwealth v. Yacoubian*, 339 Pa.Super. 413, 420, 489 A.2d 228, 231 (1985):

Although ... drug distributions are made criminal by other statutory provisions, the corrupt organizations section of the Crimes Code is not superfluous. This section enables law enforcement to reach the criminal enterprise which has no legitimate dimension or has yet to achieve one. To prove a violation of the corrupt organizations provision, the Commonwealth must prove more than the commission of a crime. It must also prove an enterprise. Thus, the Commonwealth was required to show in the instant case that the fencing of stolen property was the work of a group of individuals acting together, or an association, whose purpose was to engage in the commerce of selling stolen goods.

The holding in *Yacoubian* was recently reaffirmed by this Court in *Commonwealth v. Besch*, 418 Pa.Super. 1155, 614 A.2d 1155 (1992).

■ While recognizing the *Yacoubian* holding, Appellant argues that the Commonwealth cannot merely establish the enterprise necessary for the racketeering charges by proving the predicate drug conspiracy offenses, but rather, must prove the existence of an enterprise separate and apart from establishing the commission of the drug offenses. In support of his claim, Appellant relies on an unpublished memorandum opinion of a panel of this Court which affirmed, by adopting the trial court opinion, the grant of *habeas corpus* relief to two petitioners on the basis that, absent proof of an enterprise separate and apart from the underlying bookmaking activities, a *prima facie* case on corrupt organization charges was not established. Initially, we note that it is well-established, by rule and case law, that an unpublished memorandum opinion of this Court cannot be considered precedent and cannot be cited by the parties to an action for any purpose. *Common-*

*wealth v. McPherson,* 368 Pa.Super. 274, 533 A.2d 1060 (1987). Moreover, as shall be discussed below, upon review of the entire record, we hold that the Commonwealth sufficiently established an enterprise beyond that necessary for the predicate drug offenses.

■ The trial court opinion adopted by a panel of this Court, in an unpublished memorandum opinion, found that the Commonwealth had failed to meet the test established for Racketeer Influenced and Corrupt Organizations (RICO) convictions under the federal statute. 18 U.S.C. §§ 1961–1968. Although Pennsylvania's corrupt organizations statute is based on the federal corrupt organizations statute, federal case law in this area is instructive, but not controlling. *Commonwealth v. Taraschi,* 327 Pa.Super. 179, 475 A.2d 744 (1984). Nevertheless, in *United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), the United States Supreme Court held that an enterprise may be established if there is (1) "evidence of an ongoing organization," (2) evidence that the various associates function as a formal or "continuing unit," and (3) evidence that the enterprise has an existence "separate and apart from the pattern of activity in which it engages." *Id.* at 583, 101 S.Ct. at 2528.

The third element of *Turkette* has subsequently been interpreted by the Third Circuit as follows:

> As we understand this last requirement, it is not necessary to show that the enterprise has some function wholly unrelated to the racketeering activity, but rather that it has an existence beyond that which is necessary to commit each of the acts charged as predicate racketeering offenses. The function of overseeing and coordinating the commission of several different predicate offenses and other activities on an ongoing basis is adequate to satisfy the separate existence requirement.

*United States v. Riccobene,* 709 F.2d 214, 223–224 (3d Cir. 1983), *cert. den., sub nom. Ciancaglini v. U.S.,* 464 U.S. 849, 104 S.Ct. 157, 78 L.Ed.2d 145 (1983). We find this interpretation to be wholly consistent with this Court's statement in *Yacoubian, supra,* that, in order to prove a corrupt organiza-

tions charge, the Commonwealth must prove an enterprise in addition to proving commission of crime.

The evidence in the present case, taken in the light most favorable to the Commonwealth, is that Appellant was in control of the distribution of methamphetamine to individuals in Clearfield County, Pennsylvania, through an organization involving various individuals including Craig Mahlon and Kevin Reilly as his immediate contacts, whether in Pennsylvania or Florida. And that through these individuals, and the use of the mail or U.P.S., the methamphetamine was then delivered to William Bell in Clearfield County who then distributed them to other individuals working for Bell. The evidence shows that Appellant, Mahlon, Reilly, and Bell were in control of the process by which the drugs would be picked up and delivered to Bell's employees, and that these transactions occurred over a period of time with the ultimate goal of distribution of methamphetamine in Clearfield County, Pennsylvania. Appellant controlled how the drugs were to be picked up, by whom, how he was to be contacted, and who had access to contact him. Although Mahlon dropped out of the operation at some point, Bell was involved all along and Appellant was fully aware of Bell's involvement and controlled how money would flow from Bell to Appellant. We find, therefore, that, under the definition of "enterprise", its interpretation in *Yacoubian*, and the instructive reasoning of *Riccobene*, the Commonwealth satisfied its burden of proving the existence of such an enterprise in addition to the proof necessary for the predicate offenses in the present case.[5]

Appellant next argues that his convictions on counts V, VI, and VII are not supported by sufficient evidence because the crimes were committed outside of Pennsylvania, and, therefore, Pennsylvania lacked jurisdiction over these offenses. We disagree.

---

5. Appellant also takes issue with the charge given the jury on this particular point and, in support, cites to a portion of the charge. Upon review of the entire charge, *Commonwealth v. Ohle*, 503 Pa. 566, 470 A.2d 61 (1983), we find that the charge given as to this offense was consistent with the holding in *Yacoubian* and was, therefore, a correct statement of the law in Pennsylvania.

18 Pa.C.S. § 102(a) (Purdon 1983) controls the jurisdiction of the courts of common pleas. It reads in pertinent part:

(a) **General rule.**—Except as otherwise provided in this section, a person may be convicted under the law of this Commonwealth of an offense committed by his own conduct or the conduct of another for which he is legally accountable if either:

(1) the conduct which is an element of the offense or the result which is such an element occurs within this Commonwealth;

\* \* \* \* \* \*

(3) conduct occurring outside this Commonwealth is sufficient under the law of this Commonwealth to constitute a conspiracy to commit an offense within this Commonwealth and an overt act in furtherance of such conspiracy occurs within this Commonwealth.

Appellant concedes that the Commonwealth has the statutory authority to prosecute him on the conspiracy charge. *Commonwealth v. Thomas,* 410 Pa. 160, 189 A.2d 255 (1963); *Commonwealth v. Snowdy,* 412 Pa.Super. 493, 603 A.2d 1044 (1992). Appellant claims, however, that the Commonwealth was without authority to charge him with the object of the conspiracy, that is, the delivery of methamphetamine. This claim is without merit. The trial court correctly notes that "[t]he determination of jurisdiction may rest on the theory of vicarious criminal responsibility which rises out of the existence of a conspiracy." Trial Court Opinion at p. 6. In *Thomas, supra,* our Supreme Court held that Pennsylvania had jurisdiction to try Thomas for felony-murder even though Thomas had taken part only in the planning of the underlying robbery and was not even present in Pennsylvania when the homicide was committed. The high court reached this result by citing the well-established rule of law that "the law imposes upon a conspirator full responsibility for the natural and probable consequences of acts committed by his fellow conspirator or conspirators [even if he was not physically present when the acts were committed] if such acts are done in

pursuance of the common design or purpose of the conspiracy." *Id.* 410 Pa. at 165, 189 A.2d at 258.

The evidence presented at trial revealed that Appellant, a resident of New Jersey, delivered drugs to Kevin Reilly who then delivered the drugs to William Bell in Clearfield County, Pennsylvania. On two occasions, Bell sent money directly to Appellant, and on one occasion, after Reilly had moved to Florida, Appellant agreed to permit Bell to pick up the drugs directly from Appellant. While transporting the drugs back to Clearfield County, however, Bell was stopped for speeding. While no drugs were discovered during this traffic stop, Appellant and Reilly thereafter arranged to have future transactions conducted through the mail and U.P.S. to Florida and from there to Pennsylvania. Upon Appellant's request, the trial court charged the jury with regard to the delivery counts:

A Defendant may not be convicted of a crime which occurs in Pennsylvania unless it was committed by his own conduct or the conduct of another for which he is legally accountable. Thus if you find that there was a delivery of drugs from Kevin Reilly to William Bell as alleged in counts six and seven, but that [Appellant] did not participate in that delivery in Pennsylvania nor had any control over Kevin Reilly concerning their delivery, this delivery, you must find him not guilty as if his act was completed in New Jersey or Florida. He has not committed a crime in Pennsylvania.

Also as to counts four and five, if you find that a delivery of drugs was made in New Jersey and that transaction was completed in New Jersey and after that transaction, [Appellant] did not have any control over what either Reilly or Bell did with the drugs, you must find [Appellant] not guilty as if his act was completed in New Jersey. He has not committed a crime in Pennsylvania.

N.T., 4/10/91, at p. 150. Based upon the above, it was for jury determination whether Appellant's actions outside Pennsylvania were acts committed in furtherance of a conspiracy to distribute methamphetamine in Pennsylvania or whether Appellant was only the New Jersey supplier of the drug to a

Florida or Pennsylvania buyer. Finding Appellant guilty on all counts, it is obvious that the jury concluded that Appellant was involved in all aspects of the drug operation and, therefore, rejected Appellant's contention that he had no control over the drugs once they were delivered to either of the two men. Upon review of the record, we find that more than sufficient evidence was presented by the Commonwealth to support this conclusion. Indeed, it is the very fact that the jury found Appellant to be involved in the conspiracy to distribute methamphetamine which provided this Commonwealth with jurisdiction to prosecute him on the delivery charges. Thus, Appellant's claim to the contrary is without merit.

Appellant's third issue challenges his conviction under count IV for delivery of a controlled substance. Count IV reads as follows:

Defendant, not being authorized by law, did unlawfully deliver a controlled substance, that is, from about August 1985 to about November 1986, Defendant did deliver to Kevin Anthony Reilly methamphetamine, a Schedule II controlled substance, in violation of Section 13(a)(30) of the Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. § 780–110(a)(30).

Appellant argues that he was charged with an offense not created by the legislature in that he was charged with delivery of a controlled substance as a continuing offense. He further claims that the "theory of a continuous crime has, until this case, been limited to young children in sexual abuse cases." Appellant's brief at p. 25. Appellant continues:

Appellant submits to the Court that Article I, Section 9 and Section 11 of the Pennsylvania Constitution and the 5th and 14th Amendments to the United States Constitution prohibit this type of broad allegation of wrong doing [sic], thereby, requiring a charging document and the proof in any criminal case to be specific as to time and date with reasonable certainty thereby maintaining the integrity of the Double Jeopardy Clause in both constitutions. *Commonwealth v. Devlin*, 460 Pa. 508, 333 A.2d 888 (1975).

There is not one case in the law of this Commonwealth which supports that the violation of 35 [P.S. §] 780–113(a)(30) is or can be a continuing offense. After all, that is what the statute charging conspiracy, 18 Pa.C.S. [§] 903, is all about, and which Appellant was charged with violating in Count III of this Information.

Appellant's Brief at p. 26–27. While our research also fails to discover case law in which a drug offense was charged as a continuous offense, we do find that continuing offenses have been charged in areas other than child sex abuse. For the reasons stated below, we find that the criminal information supporting Appellant's conviction under count IV was sufficient.

Initially, we note that Appellant's constitutional claims are undeveloped. "It is not the function of this Court to consider, and respond to, vacuous claims." *Commonwealth v. Delligatti*, 371 Pa.Super. 315, 329, 538 A.2d 34, 41 (1988), *alloc. den.*, 520 Pa. 595, 552 A.2d 250. We have also cautioned that "when the briefs are wholly inadequate to present specific issues for review, a court will not consider the merits thereof." *Commonwealth v. Sanford*, 299 Pa.Super. 64, 67, 445 A.2d 149, 150 (1982). The only case cited by Appellant in support of his constitutional claims is *Commonwealth v. Devlin*, 460 Pa. 508, 333 A.2d 888 (1975). *Devlin*, however, involved a situation where the defendant was accused of performing a single act of sodomy upon a retarded, adult male who was unable to specify a specific date upon which the single event occurred. Thus, *Devlin* did not involve a continuing offense and does not support Appellant's claim. Likewise, it appears that Appellant argues that he cannot be charged with both conspiracy and delivery, as a continuing offense, on double jeopardy grounds. This one sentence claim is also undeveloped and will not be addressed.

Rule 225(b) of the Rules of Criminal Procedure, 42 Pa.C.S. (Purdon 1989), lists the requisite contents of a criminal information. With regard to the date of the offense, Rule 225(b)(3) reads:

(3) the date when the offense is alleged to have been committed if the precise date is known, and the day of the week if it is an essential element of the offense charged, provided that if the precise date is not known *or if the offense is a continuing one,* an allegation that it was committed on or about any date within the period fixed by the statute of limitations shall be sufficient. (Emphasis added).

In *Commonwealth v. Niemetz,* 282 Pa.Super. 431, 422 A.2d 1369 (1980), the information filed against the defendant charged that the alleged sex offenses occurred beginning in 1972 and continuing until August, 1977. In finding that the trial court properly denied the defendant's motion to quash the information, this Court, citing Rule 225(b)(3), stated:

... the pertinent allegation contained in the information appears to fit precisely Rule 225's proviso that an allegation that an offense was committed "on or about *any* date within the period fixed by the statute of limitations shall be sufficient" [emphasis in original] when (1) time is not of the essence [that is, date of commission is not an element of the offense] and (2) a precise date is unknown.

\* \* \* \* \* \*

Moreover, we do not believe that it would serve the ends of justice to permit a person to rape and otherwise sexually abuse his child with impunity simply because the child has failed to record in a daily diary the unfortunate details of her childhood. Since the facts of the instant case preclude a definitive enumeration of events and because the record belies any assertion that the Commonwealth sought to abuse the flexibility of Rule 225, we hold that it was not an abuse of discretion to deny the motions.

*Id.,* at 440, 422 A.2d at 1373 (footnote omitted); *see also Commonwealth v. Shirey,* 333 Pa.Super. 85, 481 A.2d 1314 (1984) (claims that informations charging continuing offenses against girls over a three month period were overly vague dismissed by this Court on the basis of *Niemetz* ).

Contrary to Appellant's claims, case law has not limited the application of Rule 225(b)(3) to child sexual abuse cases. In a case involving criminal conspiracy, theft by deception, and

Public Welfare Code violations, we held that where the Commonwealth establishes that the crime charged was a continuing one, and where the dates fell within the applicable statute of limitations for the substantive crime, the dates in the information were sufficiently certain despite their lack of specifying one particular date upon which the crimes occurred. *Commonwealth v. Volk,* 298 Pa.Super. 294, 444 A.2d 1182 (1982). What constitutes a continuing offense must be determined by the facts of the individual case. In *Volk,* this Court found that the defendant's claim of trial counsel's ineffectiveness for failing to move to quash the information against him, where the information was not specific as to the dates or times of the crimes charged therein, lacked arguable merit:

> Herein, the Commonwealth established that the crime was a continuing one. Appellants received a total of forty-eight checks, commencing on June 20, 1975, and continuing at the rate of two per month until May 12, 1977. Moreover, the informations set forth that the offenses were committed on or about May 12, 1977, and at divers times prior thereto. With reference to the welfare fraud charge, the informations specifically provided:
>
> > [Said defendant(s) ] ... deliberately conceal[ed] the receipt of income and other available resources ... during the period June 20, 1975 through May 12, 1977.
>
> On the basis of our discussion dealing with the applicable statutes of limitations for each of the three crimes for which appellants were convicted, we can conclude that the dates represented within the information fell "within the period fixed by the statute of limitations" and therefore, were "sufficient."

*Id.* at 306–07, 444 A.2d at 1188.

The definition of theft by deception reads, in pertinent part:

> (a) **Offense defined.**—A person is guilty of theft if he intentionally obtains or withholds property of another by deception. A person deceives if he intentionally:
>
> > (1) creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind; but deception as to a person's intention to

perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise; 18 Pa.C.S. § 3922(a)(1) (Purdon 1983). The definition of a violation of the Public Welfare Code under which the defendant was convicted in *Volk* reads:

(a) Any person who, either prior to, or at the time of, or subsequent to the application for assistance, by means of a willfully false statement of misrepresentation, or by impersonation or other fraudulent means, secures, or attempts to secure, or aids or abets any person in securing assistance, or Federal food stamps, under this article shall be guilty of a misdemeanor, and, upon conviction thereof, shall be sentenced to pay a fine not exceeding one thousand dollars ($1,000), or to undergo imprisonment not exceeding one year, or both, and also shall be sentenced to make restitution of any moneys he has received by reason of any such false statement, misrepresentation, impersonation, or fraudulent means.

*Volk,* at 302–03, 444 A.2d at 1186 (emphasis omitted) citing 62 P.S. § 481(a) (Purdon Supp.1981).

 It is clear from the reading of these two definitions that there is nothing contained therein indicating that these crimes are inherently of a continuing nature. Therefore, when the facts of a particular case indicate an ongoing, or continuing nature, as they did in *Volk,* the court is justified in finding that, under Rule 225, an information is sufficient if the dates stated are within the applicable statute of limitations. The applicable statute of limitations for the delivery of methamphetamine, 35 Pa.S. § 780–113(a)(30), *supra,* is five years. 42 Pa.C.S. § 5552(b)(2) (Purdon Supp.1992). The information charged Appellant with violations from August 1985 to November 1986, and Appellant was arrested on August 21, 1990, which is within the five year statute of limitations. We also find that "time is not of the essence" in that the date of commission is not an element of the drug charge. Moreover, a review of the record does not indicate that the Commonwealth abused the flexibility provided in Rule 225(b)(3), *Niemetz, supra.* Finally, while Appellant makes general claims of

constitutional violations, he does not sufficiently demonstrate how he was prejudiced by this particular count in the criminal information. We therefore find that, based on the facts in the present case, which indicate that numerous transactions occurred between Appellant and Reilly from August of 1985 to November 1986, the information was sufficiently certain. *See also Commonwealth v. Stewart*, 375 Pa.Super. 585, 544 A.2d 1384 (1988), *alloc. den.*, 520 Pa. 604, 553 A.2d 967 (finding interference with custody of child to be a continuing offense—it is not merely the taking or enticing of the child that constitutes the offense, but rather, the continued maintenance of the child outside the custodial dominion).

Finally, Appellant argues that the results of a search upon Appellant's property in New Jersey conducted in October 1986 should not have been admitted into evidence at Appellant's trial because the search warrant was issued without probable cause. More specifically, Appellant argues that the information providing probable cause was stale, and the issuance of the warrant was therefore improper. It is a fundamental principal of the conflicts of laws that a court employs its own state's procedural rules. "That is true in both civil and criminal cases, but especially in criminal cases as a sort of corollary to the local nature of substantive criminal law. Procedures in criminal cases are always those of the forum." Leflar, *American Conflicts Law*, Fourth Edition, § 116 (1977). The law of evidence, including the admissibility of specifically offered evidence, has traditionally been characterized as procedural law. *Id.; see also* Restatement (Second) of Conflict of Laws, § 138 (1971). Thus, we need only determine whether the application for the search warrant and accompanying affidavit was sufficient to establish probable cause for the search warrant under Pennsylvania law. In reviewing a magistrate's determination that probable cause exists to support the issuance of an arrest or search warrant under the "totality of the circumstances" test of *Commonwealth v. Gray*, 509 Pa. 476, 477, 503 A.2d 921, 922 (1985) citing *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), this Court must ensure that the magis-

trate had a substantial basis for concluding that probable cause existed. *Commonwealth v. Moore*, 321 Pa.Super. 1, 467 A.2d 862 (1983).[6] The test for probable cause "is not one of certainties, but rather of probabilities dealing with the considerations of everyday life. It is not equivalent to the 'proof beyond a reasonable doubt' standard applied in a criminal trial." *Commonwealth v. Sirbaugh*, 347 Pa.Super. 154, 165, 500 A.2d 453, 459 (1985) (citations omitted). The task of the issuing magistrate is to simply make a common sense decision whether, given all the circumstances set forth in the affidavit, including the veracity and basis of the knowledge of persons supplying the information, there is sufficient information to conclude that probable cause exists. *Commonwealth v. Yerger*, 333 Pa.Super. 501, 482 A.2d 984 (1984), *alloc. granted*, 515 Pa. 593, 528 A.2d 602 (1987), *dismissed* 518 Pa. 465, 544 A.2d 446 (1988).

Suppression or exclusion of evidence is a most extreme remedy that is justified only when necessary to vindicate fundamental rights and to correct or deter police abuse. *Commonwealth v. Mason*, 507 Pa. 396, 490 A.2d 421 (1985). In reviewing the denial of a motion to suppress evidence, this Court must determine whether the factual findings of the suppression court are supported by the record:

> In making this determination, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense, as, fairly read in the context of the record as a whole, remains uncontradicted. If, when so viewed, the evidence supports the factual findings, we are bound by such findings and may only reverse if the legal conclusions drawn therefrom are in error. *Commonwealth v. Trenge*, 305 Pa.Super. 386, 451 A.2d 701 (1982).

*Commonwealth v. Chamberlain*, 332 Pa.Super. 108, 112, 480 A.2d 1209, 1211 (1984). The magistrate's decision must be based on the four corners of the affidavit in support of the issuance of the warrant, *Commonwealth v. Way*, 342 Pa.Su-

---

6. We note that New Jersey has also adopted the "totality of the circumstances" test in *State v. Novembrino*, 105 N.J. 95, 519 A.2d 820 (1985).

618

per. 341, 492 A.2d 1151 (1985), although oral testimony is permitted. *See, generally* Pa.R.Crim.P. 119(a) and 2003(a), 42 Pa.C.S. (Purdon 1989), and the comments thereto.

"It is well established in this Commonwealth that stale information cannot supply the probable cause necessary for the issuance of a search warrant. If, however, it is demonstrated that criminal conduct has in fact continued, then the relevant information, in spite of its vintage, may not be deemed stale." *Commonwealth v. Eazer,* 455 Pa. 320, 323, 312 A.2d 398, 399 (1973) (citations omitted). "Courts have been reluctant, however, to set a hard and fast rule as to what constitutes staleness; such a determination must be made on a case by case basis. Mere lapse of time between discovery of criminal activity and issuance of the warrant will not necessarily dissipate probable cause; a showing that the criminal activity is *likely* to have continued up to the time of issuance of the warrant will render otherwise stale information viable." *Commonwealth v. Stamps,* 493 Pa. 530, 536, 427 A.2d 141, 144 (1981) (footnote omitted) (emphasis added). Therefore, we must look at the warrant and the affidavit of probable cause which were before the magistrate in New Jersey at the time the warrant was issued.

The affidavit of probable cause in this case is the transcript from the proceeding before the magistrate in New Jersey. This proceeding was conducted on October 7, 1986, at approximately 4:30 p.m. The testimony submitted by the affiant, Investigator Michael King, was that he was contacted by Detective Dennis Holba of the Mount Holly Township Police Department. Detective Holba had interviewed Eva Young who told him that, on October 4, 1986, Appellant had threatened to blow up her house. Acting on that information, King reviewed records in the Prosecutor's office regarding Appellant's prior involvement with explosive devices. These records included a previous investigation in November 1985 in cooperation with New Jersey State Police Narcotics Central Bureau in which pipe bombs and explosive powder were turned over to the police by Appellant's brother.

Appellant's brother, in June of 1986, again spoke with the State Police Narcotics Unit indicating he had personal knowledge that Appellant was in possession of explosive devices which were stored both at Appellant's residence and at a commercial establishment in Juliustown Township, New Jersey. In June of 1986, the Mount Holly Police spoke with another individual who had seen approximately five cases of dynamite in Appellant's possession in January 1986. Investigator King also testified to having received information from a confidential informant in June of 1986 to the effect that Appellant had access to weapons and bombs. The reliability of this informant was established. After this testimony, the magistrate made the following findings:

I find there is adequate probable cause to believe that located at the residence of 7 Ridgely Street you will find explosive devices or other destructive devices and records of other materials that would be evidence in connection with the prosecution for possession of those items, and I find in the same way that you have reasonable cause—probable cause to believe that at the Auto Craft establishment you will find various explosive devices, records and components with explosive devices. I believe that the search should reasonably extend to buildings and any containers, which could contain these items, and including the safes; and the typed warrant doesn't indicate the safes, but I will specifically add that into Paragraph 6 of each.

I find that there is reasonable cause to believe that Mr. Dennis may have such explosives on his person because they're described as small enough to be portable and that it would be proper to search him as well, that there is a logical connection between the fact that there is evidence that he was in possession of these things in the past at these two locations, that he's currently making threats to blow people up, that there's reasonable grounds to believe that he presently has access to those materials located at the residence and at the place of business.

(N.T., 10/7/86, at pp. 25–26).

Based on the testimony which constitutes the affidavit of probable cause, we find that the magistrate properly found

the presence of probable cause. The Commonwealth argues that Appellant has failed to have the suppression hearing transcript before our Court of Common Pleas made a part of the record pursuant to Pa.R.A.P.1911, 42 Pa.C.S. (Purdon 1989). We agree that there is no transcript in the official record, and that we may take such action as we deem appropriate, including dismissal of the appeal. Because of the presence of the New Jersey warrant and "affidavit", our appellate review has not been hampered by the absence of the suppression hearing transcript, and while we do not countenance Appellant's failure to provide the transcript, we decline to dismiss the appeal for this reason.

Judgment of sentence affirmed.