J-S21041-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| WALTER FRANK MEYERLE | |
| Appellant | No. 1252 EDA 2013 |

Appeal from the Judgment of Sentence January 24, 2013
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0004709-2011
CP-09-CR-0004719-2011
CP-09-CR-0004747-2011
CP-09-CR-0004863-2011
CP-09-CR-0002035-2012

BEFORE:  SHOGAN, J., ALLEN, J., and OTT, J.

MEMORANDUM BY OTT, J.:                    **FILED DECEMBER 24, 2014**

Walter Frank Meyerle brings this appeal from the judgment of sentence imposed on January 24, 2013, in the Court of Common Pleas of Bucks County.  The trial judge found Meyerle guilty of numerous criminal offenses arising from the sexual abuse of 15 male and female minor victims. Meyerle was sentenced to an aggregate sentence of 479½ to 959 years' imprisonment.[1]  In this appeal, Meyerle claims the trial court erred in failing

---

[1] On January 24, 2013, the trial court imposed consecutive sentences as follows:

At Docket Number CP-09-CR-0004709-2011 — 20 to 40 years; at Docket Number CP-09-CR-0002035-2012, 39½  to 79 years; at Docket Number CP-09-CR-0004719-2011 — 25½  to 51 years; at Docket Number CP-09-CR-

*(Footnote Continued Next Page)*

to grant his motion to suppress, contending (1) the search warrant was invalid because it contained information law enforcement knew or should have known was false, (2) the search warrant was invalid because it contained stale information, and (3) the search of a computer was improper because the serial number of the computer that was searched did not match the serial number listed on the search warrant. **See** Meyerle's Brief, at 3. Based upon the following, we affirm.

The parties are well acquainted with this case, and therefore, at the outset, we reiterate only a portion of the trial court's discussion to provide background to the issues raised in this appeal:

> On August 21, 2012, [Meyerle] was found guilty of 188 criminal offenses arising from the sexual abuse of 15 male and female victims ranging in age between four years old and 17 years old. The abuse occurred over the course of 14 years. [Meyerle] was convicted of Rape by Forcible Compulsion, Attempted Rape by Forcible Compulsion, Sexual Assault (intercourse without consent), Involuntary Deviate Sexual Intercourse by Forcible Compulsion, Involuntary Deviate Sexual Intercourse - victim less than 13 years old, Involuntary Deviate Sexual Intercourse - victim less than 16 years old/defendant four or more years

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

0004863-2011 — 3½ to 7 years; and at Docket Number CP-09-CR-0004747-2011 — 406 to 812 years. The total aggregate sentence was 494½ to 989 years' imprisonment. On January 30, 2013, the trial court vacated the sentences imposed at Counts Seven and Eight of Docket Number CP-09-CR-0002035-2012, which were consecutive sentences that totaled 15 to 30 years' imprisonment. Therefore, we calculate Meyerle's sentence as an aggregate sentence of 479½ to 959 years' imprisonment.

older, Unlawful Contact with Minor (for the purpose of engaging in Involuntary Deviate Sexual Intercourse), multiple counts of Aggravated Indecent Assault - victim less than 13 years old with lack of consent, force, threat of force, unconscious/unaware, Aggravated Indecent Assault - victim less than thirteen 13 years old, Aggravated Indecent Assault - victim less than 16 years old/defendant four or more years older than victim, Statutory Sexual Assault, Indecent Assault - without consent, Indecent Assault - victim less than 13 years old, Indecent Assault - victim less than 16 years old/defendant four or more years older, Obscene and Other Sexual Materials and Performances - Dissemination to Minors, Terroristic Threats, Corruption of Minors, Tattooing Minor, Criminal Use of a Communication Facility, Sexual Abuse of Children - Child Pornography, Solicitation to commit Escape from Bucks County Correctional Facility.[2] …

Factual History

The facts in the instant case are not contested. [Meyerle] stipulated to the admission of the Commonwealth's evidence through police reports, the testimony of the investigators and other exhibits. The 15 victims, many of whom were unknown to each other, corroborated one another and were corroborated by numerous other witnesses including other uncharged victims. The victims' statements were substantiated by telephone records and wire interceptions. Their accounts of abuse at the hands of [Meyerle] followed a strikingly similar pattern of grooming and escalation.

****

On March 16, 2011, detectives applied for and obtained a search warrant for [Meyerle's] home[.] The items to be seized were identified as follows:

---

[2] **See** 18 Pa.C.S. §§ 3121(a)(1), 901, 3124.1, 3123(a)(1), 3123(a)(6), 3123(a)(7), 6318(a)(1), 3125(b), 3125(a)(7), 3125(a)(8), 3122.1, 3126(a)(1), 3126(a)(7), 3126(a)(8), 5903(c)(1), 2706(A)(1), 6301(a)(1), 6311(a), 7512, 6312(d), 902(a), respectively.

iPhone, [c]omputers, digital media storage devices to include iPods, compact discs, external hard drives, thumb drives, digital tape backup drives, DVD's, VHS or other video tapes, camcorders, cameras, recording devices, photographs, [p]hotographs of the interior and exterior of the home, Gray dumbbell weights, tattooing equipment, pornographic material, [c]ell phones and packaging for Cricket and TracFoneone cellular telephones.

The following day, March 17, 2011, the search warrant was executed at his residence. The evidence seized as a result of the search warrant included a Toshiba Satellite L355D Laptop computer, a Fujitsu N124 250 Gigabyte hard drive, a generic desktop computer, a Western Digital Caviar 30.7 Gigabyte hard drive, a Memorex CD-R with 700 Megabyte capacity, a photo card with pictures, two iPhones, a Cannon Power Shot Camera SD79013, an AT&T receipt for an iPhone, a Fuji Film Fine Pix Camera F-10, an Olympus Camera K7140562760, a round thumb drive, three assorted compact discs, a black bag with a Polaroid camera and other assorted old cameras, a black bag with Olympus camera and flash, a black folder with compact discs, a Ja Rule compact disc case which contained two pornographic compact discs, a "Jaken" compact disc, an Olympus VN-180 Digital Voice Recorder, a VHS video tape, a black camera, and assorted items.

****

The probable cause affidavit for the challenged search warrant related the following facts. K.M.'s mother reported that [Meyerle] had given her 15-year-old daughter a tattoo "of a star that was placed on her daughter's pelvic (sic) low enough to be hidden from view by her underwear," that [Meyerle] had been in cellular telephone communication with K.M., encouraging her to masturbate while he listened and requesting that she send him naked photographs of herself, and that K.M. admitted that she had sent [Meyerle] suggestive photographs. On February 3, 2011, K.M. was interviewed and told police that she had sexual intercourse with [Meyerle] in order to get the tattoo, that she continued to have sexual relations with him thereafter at which time she noticed that he had a dollar sign tattoo on his penis, that she had regular telephone contact with [Meyerle] late at night and during the early morning hours, and that she had "telephone sex with [him] upwards of fifty times" using her

cellular telephone and two other pre-paid cellular telephones provided by [Meyerle]. K.M. told police that her friend L.H. also engaged in "telephone sex" with [Meyerle].

The affidavit set forth L.H.'s cellular telephone number as related by K.M. and then read as follows:

> [K.M.] advised that sometime in January 2011, "LH" has taken revealing pictures of [K.M.] with this cellular telephone and sent them to [Meyerle's] cellular telephone. [K.M.] also has taken revealing pictures of "LH" with "LH's" cellular telephone and sent the pictures of "LH" to [Meyerle's] cellular telephone. [K.M.] saw these pictures on Meyerle's iPhone when she was at his house at the end of January 2011. An iPhone is a line of internet and multimedia enabled smartphones designed and marketed by Apple Inc. Smartphones are typically backed up through Microsoft software and Apple iTunes software that are installed on a computer specifically to back up and download multimedia files that include music, pictures, and video.

The affidavit then related the following information. Telephone records obtained by court order confirmed that, between July 2010 and November 2010, there were thousands of cellular communications between [Meyerle's] AT&T cellular telephone and K.M.'s cellular telephone, 151 of which were voice calls placed between 10:00 P.M. and 4:00 A.M. The telephone records also confirmed that from January 2011 up to February 9, 2011, there were thousands of communications between [Meyerle's] AT&T cellular telephone and L.H.'s cellular telephone, that the majority of the 216 voice calls were placed in the late evening or early morning hours, and that 43 multimedia messaging service text messages were sent.

In addition to the recent victimization of K.M. and L.H., the affidavit also included the following information regarding prior abuse:

- K.M.'s aunt was interviewed and advised police that she had a sexual relationship with [Meyerle] beginning in 2001 when she was 16 years old, that after Children and Youth and her father barred her from having contact with him, she continued to have contact with him through a pre-paid

telephone he paid for, that he asked her to masturbate while he listened, that he attempted to involve children in their sexual encounters, and, finally, that he videotaped her performing oral sex on him and subsequently threatened to show the tape to others.

- In 2003, nine-year-old V.K. reported to Bensalem Township police that she was sexually abused by [Meyerle], that she was shown a pornographic image of pop singer Brittney Spears and that [Meyerle] tried to make her watch a movie that had "people having sex."

- S.H. reported to Bensalem Township police that she was sexually abused by [Meyerle] between December 2000 and August 2002, when she was 13 or 14 years old.

- In 1999, J.C.'s mother reported to Bensalem police that [Meyerle] "touched" 4-year-old J.C. and "made her watch dirty movies." Mother and daughter confirmed this report to a Bensalem detective in 2010.

- In a letter dated July 15, 2010, "D.H." told her sister that nine years earlier, when she was 16 years old, she was sexually assaulted by [Meyerle] and that, at that time, [Meyerle] showed her a video of her changing in the bathroom of his residence.

- In approximately 2006, [Meyerle] attempted to persuade his girlfriend to have sex with her five-year-old son while he watched. After she "threw him out," she found a videotape depicting two young girls undressing and taking showers.

- L.I. reported to Bensalem police that in June of 2010 she was raped by [Meyerle], that he showed her a dollar sign tattoo he had on his penis, telling her that "women like to blow money," and that he called her and told her to masturbate while he listened. On one occasion he told her to masturbate in her son's bed.

Trial Court Opinion, 8/14/2013, at 1–2, 23–24, 25–27 (footnotes omitted).

Following the disposition of pretrial motions, a non-jury trial was held on August 13, 14, 15, and 17, 2012. On August 21, 2012, Meyerle was found guilty as set forth above. Meyerle was sentenced on January 24, 2013. By order dated January 30, 2013, the court vacated sentence on two counts at case number CP-09-CR-0002035-2012.[3] Meyerle filed post-sentence motions that were later withdrawn. On April 22, 2013, Meyerle filed this timely appeal.[4]

At the outset, we state our standard of review of the trial court's denial of the motion for suppression:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression

---

[3] The trial court noted that "[the] two counts had been demurred at the time of trial based on the age of the victim." Trial Court Opinion, 8/14/2013, at 20 n.42.

[4] Meyerle timely complied with the order of the trial court to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Hoppert*, 39 A.3d 358, 361–362 (Pa. Super. 2012) (citation omitted), *appeal denied,* 57 A.3d 68 (Pa. 2012).

Meyerle first contends that "[t]he March, 2011 affidavit [of probable cause for the search warrant] was invalid because it contained information law enforcement knew or should have known was false." Meyerle's Brief at 22. The principles that guide our review are as follows:

> In order to secure a valid search warrant, an affiant must provide a magistrate with information sufficient to persuade a reasonable person that there is probable cause for a search. The information must give the magistrate the opportunity to know and weigh the facts and to determine objectively whether there is a need to invade a person's privacy to enforce the law.
>
> ****
>
> While we have recognized that the veracity of facts establishing probable cause recited in an affidavit supporting a search warrant may be challenged and examined, we have not suggested that every inaccuracy will justify an exclusion of evidence obtained as a result of the search.

The question of whether a misstatement was deliberately made is to be answered by the lower court.

*Commonwealth v. Baker*, 24 A.3d 1006, 1017 (Pa. Super. 2011) (citations omitted), *affirmed on other grounds*, 78 A.3d 1044 (Pa. 2013).

Meyerle's argument is based on language in the March 16, 2011, affidavit regarding the report of the minor victim, K.M., that, in January, 2011, another minor victim, L.H., had taken revealing pictures of K.M. with

L.H.'s cell phone and sent them to Meyerle's phone, and K.M. had taken revealing pictures of L.H. on L.H.'s cell phone that were sent to Meyerle, and that K.M. had seen these photographs on Meyerle's iPhone when she was at his house at the end of January, 2011. Meyerle points out this same information was repeated in the April 14, 2011 affidavit.[5] Meyerle argues he did not own the iPhone in question until February, 2011. He asserts police learned this, too, before they obtained the April 14, 2011, warrant.[6] *See* Meyerle's Brief, at 22. Meyerle maintains "K.M.'s representation that [she] saw any pictures on it in January, 2011 was untrue." *Id.*

Meyerle also argues that law enforcement should have known that the statement in the March 16, 2011 affidavit, which stated that in a September, 2010, interview, L.I. indicated she was raped by Meyerle, was a misstatement, since he was incarcerated from June 15, 2010 and into July,

---

[5] There were four search warrants in this case:

> Police obtained the first search warrant on March 16, 2011. Based on items seized during the execution of that warrant, police obtained a second warrant on April 14, 2011 to search computers, iPhones and all associated storage devices. Police obtained the third warrant on June 16, 2011 to seize [Meyerle's] correspondence. Police obtained a fourth warrant on June 22, 2012, to conduct further forensic analysis of [Meyerle's] iPhone.

Trial Court Opinion, 8/14/2013, at 30 n.53.

[6] We note that no information was seized from Meyerle's iPhone as a result of the April 14, 2011, warrant, due to "technology issues" regarding the locked iPhone. *See* N.T., 7/26/2012, at 96.

2010. Meyerle again notes this information was repeated in the April 14, 2011 affidavit.

The trial court rejected Meyerle's argument that the allegations were material misrepresentations police knew to be false, as follows:

> First, [Meyerle] claimed that K.M. lied when she told police that she and L.H. had sent revealing photographs of themselves to [Meyerle's] cellular telephone and that she had seen those photographs on [Meyerle's] iPhone when she was at [Meyerle's] home in January of 2011. [Meyerle] argued that evidence that the iPhone seized from [Meyerle's] residence was not purchased until February of 2011, after K.M. stated she saw the photographs, and the fact that no images of K.M. were found on that iPhone proved that K.M. lied to police and further proved that the police knew that she had lied.
>
> Contrary to [Meyerle's] assertion, there is no basis to conclude that K.M. lied to police. There is more than sufficient evidence to warrant the conclusion that explicit photographs of K.M. and L.H. were sent to [Meyerle]. L.H. corroborated K.M.'s account. Telephone records confirmed that [Meyerle] had communicated with the girls during overnight hours on hundreds of occasions and that 43 multimedia messaging service text messages were exchanged between [Meyerle's] cellular telephone and L.H.'s cellular telephone during the period of time K.M. reported the photographs were taken using L.H.'s cellular telephone and forwarded to [Meyerle]. The fact that the photographs described by K.M. were not on the iPhone he purchased in February does not prove that K.M. lied when she said she saw the photographs on an iPhone in January. K.M. never identified any particular iPhone. Police confirmed that [Meyerle] had a cellular telephone in January, that that cellular telephone had the same telephone number as the iPhone purchased in February and that it was capable of sending and receiving multimedia messaging service text messages.
>
> Since there is no evidence that K.M. lied to police, it follows that the police did not make deliberate and material misstatements of fact. Even if the facts relied upon by [Meyerle] could somehow be interpreted to call into question the reliability of K.M.'s

- 10 -

statement, the warrant would still be valid. The validity of the warrant must be judged in light of the information available to the officers at the time they obtained the warrant. The discovery of facts demonstrating that a valid warrant was unnecessarily broad does not retroactively invalidate the warrant. ***See Maryland v. Garrison***, 480 U.S. 79, 107 S. Ct. 1013, 94 L.Ed.2d 72 (1987); ***Commonwealth v. Simpkins***, 36 A.2d 623 (Pa. Super. 2012).

In the instant case, the affiants were not aware that [Meyerle] purchased an iPhone in February of 2011 when they wrote and submitted the affidavit of probable cause.[51]

_____

[51] N.T., 7/26/12 p. 125. The defense conceded that the affiants were not aware of the purchase of the new iPhone when they made the application for the March 16, 2011 search warrant. N.T. 7/26/12 p. 92.

_____

Nor could the affiants have been aware of what a search of the iPhone would ultimately reveal when they submitted that affidavit. There is, therefore, no basis to conclude that the affiants made deliberately false statements. ***See Commonwealth v. Gomolekoff***, 910 A.2d 710 (Pa. Super. 2006) (held, although the two emails on which the warrant was based were not actually found on appellant's computer, there was no evidence that the affiant made a deliberately false statement or made statements with a reckless disregard for the truth).

[Meyerle] also argued that the affiants made a deliberate misstatement of material fact when they included information from L.I. that she had been raped by [Meyerle] in "late June of 2010" relying on evidence that [Meyerle] was incarcerated from June 15, 2010 until July 9, 2010. Contrary to [Meyerle's] assertion, this evidence does not prove that L.I. lied about being raped. At most, it establishes an issue as to the date of the offense which is not an element of the crime. Moreover, there is no evidence that the police made a deliberate misstatement of fact since there was no evidence that they were aware of [Meyerle's] incarceration when they submitted their search warrant application. What they may have learned after the fact

- 11 -

cannot retroactively invalidate the warrant. ***See Maryland v. Garrison, supra; Commonwealth v. Simpkins, supra***.

Trial Court Opinion, 8/14/2013, at 27–29 (some footnotes omitted).

The trial court's conclusion that there is no evidence K.M. lied to police and that police did not make a deliberate or knowing misstatement of material fact is sound, and there is no basis upon which to disturb this determination. As the trial court cogently reasoned, K.M. did not identify any particular iPhone; telephone records confirmed multimedia messaging service text messages exchanged between Meyerle's cellular telephone and L.H.'s cellular telephone during the period of time K.M. reported the photographs were taken using L.H.'s cellular telephone and forwarded to Meyerle; and police confirmed that Meyerle had a cellular telephone in January, that that cellular telephone had the same telephone number as the iPhone purchased in February, and that it was capable of sending and receiving multimedia messaging service text messages. Likewise, the trial court aptly concluded that L.I.'s information that she had been raped in "late June of 2010," does not evidence a material and deliberate misrepresentation simply because Meyerle was incarcerated between June 15, 2010 and July 9, 2010. As the trial court astutely recognized, Meyerle's

incarceration established, at most, an issue as to the date of the offense.

Accordingly, Meyerle's first argument warrants no relief.[7]

Next, Meyerle argues that "[t]he March 16, 2011, search warrant was invalid because it contained stale information necessary to the finding of probable cause." Meyerle's Brief at 24. Specifically, Meyerle claims:

> The affidavit relies on old allegations of [Meyerle's] misconduct: Making a juvenile watch pornography in 1999, assaulting a juvenile seven or eight times between 2000 and 2002, threats to show a videotape of someone performing oral sex on [Meyerle] in 2001, videotaping a juvenile changing clothes in 2001, showing a juvenile pornographic movies in 2003, and [Meyerle] trying to persuade his girlfriend to have sex with her son while [Meyerle] watched. These allegations are too old to be the basis for a 2011 search[.] For these reasons, the results of the search should be discarded.

*Id.* at 25.

With respect to staleness, this Court has stated:

> [A]ge of the information supporting a warrant application is a factor in determining probable cause. If too old, the information is stale, and probable cause may no longer exist. Age alone, however, does not determine staleness. The determination of probable cause is not merely an exercise in counting the days or even months between the facts relied on and the issuance of the warrant. Rather, we must also examine the nature of the crime and the type of evidence.

---

[7] Meyerle, in his reply brief, further asserts "[i]n this case the investigating officers do not have any excuse for seizing a phone not described in their warrant." Meyerle's Reply Brief at 3. This argument concerns the issue of the scope of the search. "[A]n appellant cannot raise new issues in a reply brief." **Commonwealth v. Williams**, 909 A.2d 383, 386 n.6 (Pa. Super. 2006). In any event, the trial court properly rejected this argument. **See** Trial Court Opinion, 8/14/2013, at 34.

*Commonwealth v. Janda*, 14 A.3d 147, 159 (Pa. Super. 2011) (citation omitted).

Pennsylvania courts have not adopted a hard and fast rule as to what constitutes staleness; instead, such a determination is made on a case by case basis. *Commonwealth v. Dennis*, 618 A.2d 972, 981 (Pa. Super. 1992), *appeal denied*, 634 A.2d 218 (Pa. 1993). A "[m]ere lapse of time between discovery of criminal activity and issuance of the warrant will not necessarily dissipate probable cause; a showing that the criminal activity is likely to have continued up to the time of issuance of the warrant will render otherwise stale information viable." *Dennis*, 618 A.2d at 981 (citation omitted).

Here, we find no merit in Meyerle's staleness argument. Moreover, the trial court thoroughly and correctly addressed this issue, as follows:

> "Although probable cause cannot, as a general rule, be founded upon stale or temporally remote information, corroborative information need not be current for it to be properly considered by magistrate issuing search warrant so long as it relates to prior conduct sufficiently similar to acts in question." *Commonwealth v. Weidenmoyer*, 518 Pa. 2, 10, 539 A.2d 1291, 1295 (1988). In the instant case, the information was included in the affidavit to establish [Meyerle's] course of conduct that spanned 12 years. It is that course of conduct that established probable cause to seize [Meyerle's] computers.
>
> Probable cause can be established based upon the type of crime, the nature of the evidence sought, and "normal inference about where a criminal might hide the fruits of his crime." *U.S. v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001) (quotations and citations omitted). The probable cause standard merely requires facts that would warrant a man of reasonable caution to believe

- 14 -

that certain items may provide useful evidence of criminal activity. "It does not demand any showing that such a belief be correct or more likely true than false. A practical, non-technical probability that incriminating evidence is involved is all that is required." *Commonwealth v. McEnany*, 667 A.2d 1143 (Pa. Super. 1995) (quotations and citations omitted).

A fair reading of the probable cause affidavit establishes the [Meyerle] began to abuse children as early as 1999 and continued to do so up until police became involved in 2011. That victimization consistently involved [Meyerle] accumulating and saving pornographic images of his victims and other pornographic images for use during his victimization of those children. In approximately 1999, [Meyerle] made J.C. "watch dirty movies." [Meyerle] sexually assaulted 13-year-old S.H. on seven or eight occasions between December of 2000 and August of 2002. In approximately 2001 or 2002, K.M.'s aunt was videotaped while performing oral sex on [Meyerle]. He subsequently threatened to show that tape to others. In 2001, [Meyerle] videotaped 16-year-old D.H. changing in the bathroom of his residence. In 2003, [Meyerle] showed V.K. pornographic images and he tried to make her watch a movie of "people having sex." In approximately 2006, [Meyerle] attempted to persuade his girlfriend to have sex with her five-year-old son while he watched. She later found a videotape of two young girls undressing and taking showers. [Meyerle] continued this course of conduct, victimizing K.M. and L.H. in 2010 and 2011, collecting sexually explicit photographs of the victims as he had done before.

These facts are clearly sufficient to cause a reasonable person to conclude that pornography and other images of [Meyerle's] victims would probably be found on [Meyerle's] computer. Even if those images had been deleted, forensic examiners could easily retrieve previously stored images. *Commonwealth v. Hoppert*, 39 A.3d 358 (Pa. Super. 2012); *Commonwealth v. Gomolekoff, supra*.

Trial Court Opinion, 8/14/2013, at 30–32.

As we agree with the trial court's sound analysis, which requires no further elaboration by this Court, we reject Meyerle's second claim.

Nor do we find merit in the final argument of Meyerle that the search of his Toshiba computer was improper because the April 14, 2011 warrant, did not set forth the correct serial number of the computer.

Meyerle argues that the April 14, 2011 warrant sought to search the hard drive of a Toshiba computer "bearing serial number PSLE04-1000R[, but] the computer searched bore a serial number 980020176Q." Meyerle's Brief, at 25. Meyerle contends that "[o]nce the police discovered that they had seized and wanted to search a computer not described in the April 14, 201[1] warrant, they were obligated, if they still wanted to search it, to obtain a new warrant," and because they did not do so, "the results of the search should be suppressed." *Id.* at 27. We disagree.

"It is well-settled that a search warrant must describe the items to be seized with specificity." ***Commonwealth v. Janda, supra***, 14 A.3d at 160 (citation omitted).

> The requirement for specificity is not strictly construed, however; it has historically been tempered by the rule that search warrants should be read in a common sense fashion and should not be invalidated by hypertechnical interpretations. This may mean, for instance, that when an exact description of a particular item is not possible, a generic description will suffice. Our law requires only that [t]he place to be searched must be described precise[ly] enough to enable the executing officer to ascertain and identify, with reasonable effort, the place intended, and where probable cause exists to support the search of the area so designated, a warrant will not fail for lack of particularity.

***Commonwealth v. Johnson***, 33 A.3d 122, 125 (Pa. Super. 2011) (citations and quotations omitted), *appeal denied*, 47 A.3d 845 (Pa. 2012).

In this case, the first page of the April 14, 2011, application for search warrant indicates police were seeking to search "a Toshiba laptop computer serial no. PSLE04-1000R."[8]  In fact, "PSLE04-1000R was the model number, and not the serial number, of the Toshiba laptop computer. Nevertheless, there were only three computers that were seized during the search of Meyerle's residence on March 17, 2011, and only one was a laptop computer.  That laptop was the only Toshiba computer brand.  The search warrant indicated that the item to be searched was "a Toshiba laptop computer."  Therefore, notwithstanding the fact that the warrant application mischaracterized Toshiba laptop model number "PSLE04-1000R" as the "serial number," the information provided in the warrant was sufficient to identify with particularity the specific computer to be searched. Accordingly, we agree with the trial court that "[s]ince there was no ambiguity regarding the item to be searched, the particularity requirements of the Fourth Amendment, Article I, Section 8 of the Pennsylvania

_____

[8] The trial court further noted:

> The affidavit [of probable cause] identified the computer as "a Toshiba laptop computer serial number 980201760."  The computer seized and in the custody of police, the computer they sought to have forensically examined, was identified on the search warrant handwritten Receipt/Inventory as follows: MODEL PSLE04-01000, SERIAL #[98020176Q]."  The computer actually forensically examined was identified as a "Toshiba Satellite L355D Laptop computer S/N [98020176Q]."

Trial Court Opinion, 8/14/2013, at 35 (footnotes omitted).

Constitution and Rule 206 of the Pennsylvania Rules of Criminal Procedure were not violated." Trial Court Opinion, 8/14/2013, at 35–36.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/24/2014