444 A.2d 1182

**COMMONWEALTH of Pennsylvania**

v.

**Manuel VOLK, Appellant.**

**COMMONWEALTH of Pennsylvania**

v.

**Rosalyn VOLK, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 5, 1980.

Filed April 23, 1982.

Penn B. Glazier, Lancaster, for appellants.

Michael H. Ranck, District Attorney, Lancaster, for Commonwealth, appellee.

Before CERCONE, President Judge, and HESTER and WIEAND, JJ.

CERCONE, President Judge:

These consolidated appeals are from the judgments of sentence entered by the Court of Common Pleas of Lancaster County. Following a non-jury trial, each of the appellants was convicted of theft by deception, conspiracy and violation of Section 481(a) of the Public Welfare Code. The amount of public assistance funds fraudulently obtained was estimated to be $9,824.90. Appellant, Rosalyn Volk, was ordered to make restitution, her sentence of imprisonment was suspended and she was placed on probation for twenty-three months with respect to the crime of theft by deception. Appellant, Manuel Volk, was ordered to make restitution and was sentenced to a term of imprisonment of not less than three months nor more than twenty-three months. Post verdict motions were filed and denied. Herein, appellants raise several allegations of error.

Appellants first claim that their waiver of a jury trial was defective because they were not advised during the colloquy (1) of their right to participate in the selection of the jury panel, (2) that the jury was to be chosen from members of appellants' community, or (3) that the verdict of

the jury must be unanimous. According to Pennsylvania Rule of Criminal Procedure, Rule 1101, a defendant may waive a jury trial. Although there is no per se prophylactic rule reversing convictions for failure to comply with Rule 1101, the Supreme Court in *Commonwealth v. Williams*, 454 Pa. 368, 312 A.2d 597 (1973), concluded that the purpose of the colloquy is to show that the defendant understands (1) that the jury would be comprised of defendant's peers, (2) that the verdict must be unanimous, and (3) that the defendant could participate in jury selection. The *Williams* court further held that there could be adequate substitutes for the colloquy. Herein, appellants signed a written waiver of jury trial. This waiver contained the *Williams* requirements. The waiver form read:

## WAIVER OF JURY TRIAL

AND NOW, January 10, 1979, comes the defendant and pleads not guilty and with the consent of his attorney, and the attorney for the Commonwealth and the approval of the judge, waives a jury trial and elects to be tried by a judge without a jury, fully understanding that if he were tried by a jury:

1. The jury would be chosen from members of the community thereby producing a jury of his peers.

2. That any verdict rendered by a jury must be unanimous and,

3. That he would be permitted to participate in the selection of a jury panel.

This waiver is identical to the one reviewed and deemed acceptable in *Commonwealth v. Harmes*, 255 Pa.Superior Ct. 147, 386 A.2d 551 (1978); in fact, *Harmes* was a Lancaster County case. The *Harmes* court concluded that the waiver set forth those ingredients of a jury trial which are necessary for the defendant to understand the significance of the right he is waiving. As here, the appellant in *Harmes* did not allege that he did not understand the waiver form. Accordingly, our court held in *Harmes* that appellant had failed to carry his burden and establish that his waiver was

not knowing and intelligent. Because we are instantly faced with the identical factual scenario, we too find that appellants have not carried their burden.

As a second point of error, appellants argue denial of their right to representation of counsel because the court denied the request that Mr. Volk be permitted to participate in the examination of witnesses and the conduct of the trial. Clearly, a defendant has a constitutional right to represent himself if he voluntarily and intelligently elects to do so. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1976). However, appellants herein *chose* to be represented by counsel. According to the American Bar Association Standards for Criminal Justice, Standards Relating to the Prosecution Function and the Defense Function, Section 5.2, there are certain decisions relating to the conduct of the case which are ultimately for the accused and others which are exclusively for defense counsel. Those decisions to be made by the accused after consultation with counsel include (1) what plea to enter, (2) whether to waive a jury trial and (3) whether to testify on his own behalf. The decisions of what witnesses to call, whether and how to conduct cross-examination, what jurors to accept or strike, what trial motions should be made, and all other strategic and tactical trial decisions are within the exclusive province of the lawyer after consultation with his client. The court below cannot be faulted for denying the request to permit Mr. Volk to participate actively in court. By constantly conferring and consulting with his chosen attorney, Mr. Volk certainly would be assured of expressing his views and participating in his own defense. Once retained, counsel is to protect the interests of the accused. A defendant should not be permitted to act on his own behalf concerning trial strategies when he is represented, and where no proper withdrawal by counsel from the case has occurred or the defendant has not made an intelligent and voluntary waiver of further assistance. *See e.g. Commonwealth v. Bell*, 442 Pa. 566, 276 A.2d 834 (1971).

300

█ Insufficiency of evidence is alleged in connection with the convictions for conspiracy, theft by deception and violation of the public welfare code. We will deal with these claims seriatum. The test to be applied by our Court in appraising the sufficiency of the evidence is a two step inquiry. First, we must regard all the evidence in the light most favorable to the Commonwealth, accepting as true all evidence upon which the fact finder could have based the verdict and then we must ask whether that evidence, along with all reasonable inferences to be drawn therefrom, was sufficient to prove guilt beyond a reasonable doubt. *Commonwealth v. Anderson*, 265 Pa.Superior Ct. 494, 402 A.2d 546 (1979); *Commonwealth v. Eddington*, 255 Pa.Superior Ct. 25, 386 A.2d 117 (1978); *Commonwealth v. Luther*, 266 Pa.Superior Ct. 240, 403 A.2d 1329 (1979). Criminal conspiracy is defined as:

(a) Definition of conspiracy.—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903 (1973).

"The essence of criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished." *Commonwealth v. Carter*, 272 Pa.Superior Ct. 411, 416 A.2d 523 (1979); *Commonwealth v. Anderson, supra.* By its very nature, the crime of conspiracy is frequently not susceptible of proof except by circumstantial evidence. *Commonwealth v. Carter, supra. Commonwealth v. Kwatkoski*, 276 Pa.Superior Ct. 401, 406 A.2d 1102 (1979). And although a conspiracy cannot be based upon mere suspicion or conjecture, *Commonwealth v.*

*Anderson, supra,* a conspiracy "may be inferentially established by showing the relationship, conduct or circumstances of the parties, and the overt acts on the part of the co-conspirators have uniformly been held competent to prove that a corrupt confederation has in fact been formed." *Commonwealth v. Carter, supra,* quoting *Commonwealth v. Horvath,* 187 Pa.Superior Ct. 206, 211, 144 A.2d 489, 492 (1958). Herein, it was clearly established that appellants received assistance grants, beginning on June 20, 1975 and continuing at the rate of two per month until May 12, 1977. Testimony also revealed that although they were advised by the welfare authorities of their responsibility to report changes of circumstances, they never did so.[1] That is, appellants acquired several large material assets, including a residence, a reasonably new automobile and a rental property. With the acquisition of the rental property, appellants' generated income which was never reported to the authorities. Even though appellants were aware of their responsibilities, they continued to endorse and cash the welfare checks which contained the following printed notice:

> By endorsing this check I certify that I have notified my County Board of Assistance of *all* changes in the facts as stated in my application for assistance and that neither I nor a member of my family has any earnings from employment or other resources which would affect the eligibility of myself or my family which I have not reported to said board. I know that I can be penalized by fine or imprisonment, or both, for any false statements.

Under these circumstances, the conduct of the parties indicate that they were acting together with the common and corrupt purpose to receive welfare funds to which they were not entitled.

■ The crime of theft by deception for which appellants were convicted is defined as:

> (a) Offense defined.—A person is guilty of theft if he intentionally obtains or withholds property of another by deception. A person deceives if he intentionally:

---

1. Moreover, appellants never expressed any misunderstanding as to the nature and scope of their responsibilities under the Welfare Code.

(1) creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise;

18 Pa.C.S.A. § 3922(a)(1) (1973).

It is appellants' position that the Commonwealth has not demonstrated the existence of false statements and even if such statements had been made, they were of no pecuniary significance, thus invoking the statutory exception found at Section 3922(b), which provides that "the term 'deceive' does not, however, include falsity as to matters having no pecuniary significance, or puffing by statements unlikely to deceive ordinary persons in the group addressed." A thorough review of the record proves appellants' claim to be frivolous. Through their continual misrepresentations, appellants created and reinforced false impressions as to their acquisition of assets and changes of income. Although aware of their duty to report changed circumstances to the Department of Welfare, appellants failed to adhere to this established welfare regulation, and thus, created the false impression that their circumstances remained unchanged and that they were entitled to the benefits.

■ In arguing that the evidence was insufficient to maintain the conviction for violation of the Public Welfare Code, appellants' claim that the provisions of the Public Welfare Code concern only those misstatements of fact with regard to initial applications. Appellants were specifically convicted for Section 481(a) of the Code which reads:

(a) Any person who, *either prior to, or at the time of, or subsequent to the application for assistance,* by means of a wilfully false statement of misrepresentation, or by impersonation or other fraudulent means, secures, or attempts to secure, or aids or abets any person in securing assistance, or Federal food stamps, under this article shall be guilty of a misdemeanor, and, upon conviction thereof, shall be sentenced to pay a fine not exceeding one thousand dollars ($1,000), or to undergo imprisonment not

exceeding one year, or both, and also shall be sentenced to make restitution of any moneys he has received by reason of any such false statement, misrepresentation, impersonation, or fraudulent means.

62 P.S. 481(a) (1981 supp.) (emphasis supplied).

A reading of this provision, belies appellants' claim. In fact, all three claims of insufficiency—conspiracy, theft by deception, and public welfare code—are without merit.

Appellants next fault the lower court for denying their motion for continuance. The charges in this case were filed on December 14, 1977, and the case was first listed for trial in March of 1978. It was continued, at the request of appellants' counsel, Richard Shay, Esquire, until May of 1978. In May of 1978 it was continued, at the request of appellants' new counsel, Michael J. Rostolsky, Esquire, until July of 1978. In July of 1978, the appellant Manuel Volk, entered a plea of guilty to one count of violating the Public Welfare Code. By agreement of the Commonwealth and the defense all remaining charges against him, and all of the charges against Rosalyn Volk would be nolle prossed. In September of 1978 a motion to withdraw guilty plea was filed by Manuel Volk, a hearing was held in October of 1978, and he was allowed to withdraw his plea. Trial was then scheduled for November of 1978 and was continued until January of 1978, at the request of the appellants' third counsel, Andrew Appel, Esquire. (Note: during 1978 Lancaster County Criminal Court was held in January, March, May, July, September, and November). Appellants' counsel who tried the case, Andrew Appel, became involved in the case around November 1, 1978. The request made by Attorney Appel was not to obtain additional evidence but only to extend the time for preparation of the case.

■ The grant or denial of a motion for continuance rests within the sole discretion of the trial court, and the decision of that court will be disturbed only where there is an abuse of discretion. *Commonwealth v. Rainey*, 271 Pa.Superior Ct. 240, 412 A.2d 1106 (1979). No abuse of discretion is evidenced in the case at bar. Counsel did not assert that harm

or prejudice would result if the continuance were not granted; he merely expressed the need for more preparation time.[2] In view of the absence of any asserted harm, appellants' argument that counsel was unable to perform competently because of insufficient time to prepare is without merit. *Commonwealth v. Palmer*, 273 Pa.Superior Ct. 184, 417 A.2d 229 (1979).

■ Appellant also asserts a Rule 1100 speedy trial violation. However, the record discloses that both appellants signed waivers of the 180 day rule, which stated that they agreed to be tried within 120 days of October 27, 1978, the date Manuel Volk's guilty plea was withdrawn. Appellants' trial commenced on January 10, 1979, which was well within the agreed upon period of time. A defendant may waive his rights under the provisions of Rule 1100, and the signed agreement by the defendant is sufficient record indication that defendant's waiver was informed and voluntary. *Commonwealth v. Myrick*, 468 Pa. 155, 360 A.2d 598 (1976); *Commonwealth v. Wareham*, 256 Pa.Superior Ct. 23, 389 A.2d 581 (1978).

Finally, appellants raise two counts of ineffectiveness: (1) that trial counsel was ineffective for failing to move to quash the information on the basis that the prosecutions for theft and conspiracy were barred by the applicable statute of limitations, and (2) that trial counsel was ineffective for failing to move to quash the information where the information was not specific as to the date or times of the alleged offenses. But because counsel cannot be faulted for failing to file baseless claims, appellants' ineffectiveness arguments fail, *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977), *Commonwealth v. Hill*, 450 Pa. 477, 301 A.2d 587 (1973).

■ With regard to appellants' first count of ineffectiveness, we find that the prosecutions for theft and conspiracy were not barred by the applicable statutes of limitation. As

---

**2.** We note parenthetically that counsel did indeed have approximately 10 weeks to prepare for trial.

a general rule, prosecutions must be commenced within two years after the crimes have been committed. 42 Pa.C.S.A. § 5552 (1981). There is, however, an exception to this rule where conspiracy is the crime. For purposes of the statute of limitation, the crime of conspiracy is a continuing offense. *Commonwealth v. Kirk,* 141 Pa.Superior Ct. 123, 14 A.2d 914 (1940), *aff'd,* 340 Pa. 346, 17 A.2d 195 (1941). *See also Commonwealth v. Cardonick,* 448 Pa. 322, 329 n. 14, 292 A.2d 402, 406 n. 14 (1972). And any conspiracy that is renewed by repetitions may be prosecuted at any time within two years after the commission of the last offense. *Commonwealth v. Kirk, supra; Commonwealth v. Dunie,* 172 Pa.Superior Ct. 444, 94 A.2d 166 (1953). Herein, the checks were received at the rate of two per month from June 20, 1975 through May 14, 1977. The complaint was filed on December 14, 1977. Given these dates, it is clear that the prosecution for conspiracy was begun well within the applicable statutory time frame.

Likewise there is an exception provided for the crime of theft by deception. The statutory exception reads as follows:

If the period proscribed in subsection (a) or (b) has expired, a prosecution may nevertheless be commenced for:
(1) Any offense a material element of which is either fraud or a breach of fiduciary obligation within one year after discovery of the offense by an aggrieved party or by a person who has a legal duty to represent an aggrieved party but in no case shall this paragraph extend the period of limitation otherwise applicable by more than three years.

42 Pa.C.S.A. § 5552(c)(1) (1981).

Fraud is a material element of the offense of theft by deception, thus invoking the exception in the instant case. *See e.g. Commonwealth v. Feldman,* 243 Pa.Superior Ct. 408, 365 A.2d 1289 (1976). *See also Commonwealth v. Evans,* 190 Pa.Superior Ct. 179, 154 A.2d 57 (1959), *affirmed* 399 Pa. 387, 160 A.2d 407 (1960), *cert. denied,* 364 U.S. 899, 81 S.Ct. 233, 5

L.Ed.2d 194 (1960). Instantly, there is testimony that the Department of Welfare first learned of the possible fraud on April 28, 1977. The charges were brought on December 14, 1977. This was within one year of discovery.[3] Appellants' first claim of ineffectiveness must thus fail.

■■■ Pennsylvania Rule of Criminal Procedure 225(b)(3) disproves the accuracy of appellants' second ineffectiveness claim, which asserts the imprecision of the information. That rule in pertinent part reads:

(b) the information shall be signed by the attorney for the Commonwealth and shall be valid and sufficient in law if it contains:

.     .     .     .     .

(3) the date when the offense is alleged to have been committed if the precise date is known, and the day of the week if it is an essential element of the offense charged, *provided that if the precise date is not known or if the offense is a continuing one, an allegation that it was committed on or about any date within the period fixed by the statute of limitations shall be sufficient.* (emphasis supplied).

Herein, the Commonwealth established that the crime was a continuing one. Appellants received a total of forty-eight checks, commencing on June 20, 1975, and continuing at the rate of two per month until May 12, 1977. Moreover, the informations set forth that the offenses were committed on or about May 12, 1977, and at divers times prior thereto. With reference to the welfare fraud charge, the informations specifically provided:

[Said defendants(s) ] . . . deliberately conceal[ed] the receipt of income and other available resources . . . during the period June 20, 1975 through May 12, 1977.

On the basis of our discussion dealing with the applicable statutes of limitations for each of the three crimes for which

3. We note here that the statute of limitations for violations of the Welfare Code is four years, 62 P.S. § 481(c) (1981 supp.); therefore, the prosecution of appellants under this chapter was also timely instituted.

appellants were convicted, we can conclude that the dates represented within the informations fell "within the period fixed by the statute of limitations" and therefore, were "sufficient."

Judgments of sentence affirmed.