487 A.2d 1010

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Richard E. HENKEL.**

Superior Court of Pennsylvania.

Submitted June 19, 1984.

Filed Jan. 25, 1985.

Robert L. Eberhardt, Deputy District Attorney, Pittsburgh, for Commonwealth, appellant.

Paul R. Gettleman, Zelienople, for appellee.

Before TAMILIA, JOHNSON and MONTGOMERY, JJ.

TAMILIA, Judge:

This is a consolidated Commonwealth appeal from two orders of March 11, 1983, granting appellee's motions to dismiss and/or quash informations charging him and others with conspiracy to commit extortion.  We reverse.

On April 15, 1981, complaints were filed against appellee, Henry Ford and Gary Small, charging conspiracy to commit extortion.  After a preliminary hearing before a judge acting as committing magistrate, all those charged were held for court and informations were subsequently filed. Appellee's pre-trial omnibus motion to suppress was granted and the Commonwealth appealed.  During the pendency of this appeal the Commonwealth petitioned to amend the informations against co-conspirators Ford and Small.  This was denied and the informations, identical to that lodged against appellee, were quashed.  No Commonwealth appeal was then filed, but new informations were lodged and these too were quashed.[1]  At this point the lower court's order

---

1.  Orders dismissing the 1981 (original) informations against co-conspirators Ford and Small were entered January 20, 1982.  However, Commonwealth appeals in these cases were not taken within the 30 day time limit for such actions, with the result that the appeals were quashed as untimely.  In the instant case Orders dismissing both the original and the amended informations against appellee were filed on

granting appellee's suppression motion was reversed by this Court and the case was remanded for trial. A Commonwealth petition requesting that the original information against appellee be amended was denied. Appellee was rearrested and after a preliminary hearing a new information was filed. On appellee's motions that both informations against him be quashed the court entered the Orders from which the Commonwealth now appeals.

The original information reads as follows:

The District Attorney of Allegheny County, by this information, charges that on (or about) the summer months of 1977 through and continuing until October 1980, in the said County of Allegheny, RICHARD HENKEL, hereinafter called actor, did commit the crime or crimes indicated herein; that is, 09031A, count 1, criminal conspiracy, felony 2. The actor, with the intent of promoting or facilitating the crime of criminal homicide of Arthur Rooney and/or Edward Ryan; and/or theft by extortion from said Arthur Rooney and Edward Ryan; and/or kidnapping of said Arthur Rooney and/or Edward Ryan, and/or robbery of said Arthur Rooney and Edward Ryan, and/or an attempt to commit said crimes, conspired and agreed with Henry Ford and/or Roy Travis, and/or Jack David Siggson, and/or Gary Edward Small, and/or Junior Kripplebair, and/or others, that they or one or more of them would engage in conduct constituting such crime or crimes, and in furtherance thereof, to commit the overt act of procuring, receiving, building, maintaining or testing a device or devices capable of carrying out part of the illegal agreement or providing weapons to co-conspirator or soliciting one or more of the co-conspirators to select a person as an appropriate victim of the illegal agreement or conducting a surveillance upon the homes of a prospec-

March 11, 1983 and the appeals by the Commonwealth were filed March 22, 1983, well within the designated time frame. We are therefore able to discuss the merits of both the 1981 and 1982 informations and are not restricted to examination of the amended documents only.

tive victim in violation of § 903(a)(1) of the Pennsylvania Crimes Code, Act of Dec. 6, 1972, 18 Pa.C.S.A. § 903(a)(1).

The amended information differed only in the following particulars: the deletion of all mention of the names of Arthur Rooney and Edward Ryan, and substitution of the phrase "against persons in Pennsylvania or California" (where co-conspirator Jack Siggson had relocated, maintaining continuous telephone contact with appellee).

The conspiracy was revealed by Siggson upon an offer of immunity in return for his testimony. Its basic elements involved the kidnapping and physical attachment to the victim of a bomb removable only upon payment of a large sum of money. Appellee's ransom expectations were in the nature of three to four million dollars. Electronic devices, to control both the movement of the victim's car from which the abduction(s) would take place, and the explosive device, were supplied by a Canadian associate. The initial (tentative) targets of the plot were, as the original information indicated, Arthur Rooney, Sr., the owner of the Pittsburgh Steelers Football Team, and Edward Ryan, a prominent local businessman. The trial court found that the Rooney/Ryan designation was a sub-plot, abandoned in 1977, of a general conspiracy and, therefore, not actionable under the applicable two year Statute of Limitations, 42 Pa.C.S.A. §§ 5551, 5552. The court further found that because appellee's statute of limitations defense would be defeated by refinement of the original information, the second information was improper and both were quashed consistent with the holding in *Commonwealth v. Stanley*, 265 Pa.Super. 194, 401 A.2d 1166 (1979).

■ Although the court's conclusion is syllogistically sound, we find that the major premise from which it proceeds, that is the focus upon plots and sub-plots, is legally improper. Semantics notwithstanding, conspiracy has been held to be a continuing offense. *Commonwealth v. Volk*, 298 Pa.Super. 294, 444 A.2d 1182 (1982), *Commonwealth v.*

*Cardonick*, 444 Pa. 322, 292 A.2d 402 (1972). It requires no quantum leap in logic to conclude that if conspiracy is not severable as to diverse crimes contemplated by a single agreement, *Braverman v. United States*, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942), it is even less so as to the proposed victims of such crimes. Although *Braverman* speaks to the question of punishment, the principle to be applied is yet the same for determining the application of such pre-trial matters as the statute of limitations; no incidental division is appropriate where the offense is on-going, as the dates in the preamble to both informations, and the evidence adduced at the preliminary hearing demonstrate it to have been.

There is no argument that the very definition of conspiracy demonstrates its integrity as a discrete offense:

18 Pa.C.S.A. § 903 Definition: a. A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he: (1) agrees with such other person or persons they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or (2) agrees to aid such other person or persons in the planning or commission of such crime, or of an attempt or solicitation to commit such crime.

To superimpose a delineating structure upon what is descriptive of a continuum of planned unlawful activity violates both the integrity of the definition and the requirements of legal precedent.

In the instant case the possession of the electronic and explosive devices, the overt act providing the actualization of illegal intent, continued from 1977 until appellee's arrest in 1980 and supplies the "repetitions" which case law characterizes as regenerative in effect. *Volk, supra; Commonwealth v. Dunie*, 172 Pa.Super. 444, 94 A.2d 166 (1953);

*Commonwealth v. Kirk,* 141 Pa.Super. 123, 14 A.2d 914 (1940), aff'd., 340 Pa. 346, 17 A.2d 195 (1941). Here, even such regeneration was unnecessary as only the identity of prospective victims, never the object of the conspiracy, was abandoned in favor of (a) more acceptable target(s).[2]

■ Because the conspiracy is not severable, the Statute of Limitations provides appellee with no viable defense. The information was, therefore, properly subject to amendment under Pa.R.Crim.P. 220 and 229.[3] The lower court found that "to add the words 'and/or others' by amendment would have resulted in broadening the group of prospective victims of the conspiracy ..." (Slip Op. at 3) rendering their inclusion an amendment "of substance rather than form, which if permitted, would result in prejudice to the rights of the defendant and his co-conspirators." (Slip Op. at 5)

■ These conclusions are based on the notion that the identity of the potential victims somehow affects the structure of the conspiracy, delimiting it by targeted individuals and activating the Statute of Limitations. This, in turn, by affecting the qualitative character of the proposed amendment, and hence the scope of the conspiracy, creates a

2. Rooney and Ryan were dismissed as potential victims because of the former's advanced age and because the conspirators were unable conclusively to identify Ryan.

3. Rule 220. Amendment of Indictments

The court may allow an indictment to be amended where there is a defect in form, the description of the offense, *the description of any person* or any property, or the date charged *provided the indictment as amended does not charge an additional or different offense.* Upon amendment the court may grant such a postponement of trial or other relief as is necessary in the interests of justice. Adopted June 30, 1964, effective Jan. 1, 1965. (Emphasis added)

Rule 229. Amendment of Information

The court may allow an information to be amended when there is defect in form, the description of the offense, *the description of any person,* or any property, or the date charged, *provided the information as amended does not charge an additional* or *different offense.* Upon amendment the court may grant such postponement of trial or other relief as is necessary in the interests of justice. Adopted and effective Feb. 15, 1974. (Emphasis added)

substantive emendation. We can only reiterate that this central postulate misses the essence of what constitutes conspiracy—a continuous agreement of unlawful purpose evidenced by an overt act in furtherance of the implementation of the criminal intent. How many or who the victims may be is entirely irrelevant. Admittedly, the original information was inartfully drawn, names of victims should not have been mentioned, as they were not contained in the complaint. But their inclusion, so far from providing a basis for fragmentation of the plan into "sub-plots" or any other equivalent configuration, constituted merely an unnecessary personification in an otherwise valid information, timely filed. The trial court's further conclusion that the proffered defense barred the subsequent and purely formal amendment merely embellishes an already untenable result.

■ Our conclusion serves also to counter the holding, relied on by the trial court, in *U.S. v. Oppenheimer*, 242 U.S. 85, 87–88, 37 S.Ct. 68, 69, 61 L.Ed. 161 (1916), that:

[A] judgment for the defendant upon the ground that a prosecution is barred (by limitations) goes to his liability as a matter of substantive law.... A plea of the statute of limitations is a plea to the merits (citation omitted) and, however, the issue was raised in the former case, after judgment upon it, it could not be reopened in a later prosecution.

This assumes that the statute of limitations is a viable defense; here, however, it is not. *Oppenheimer* applies to a second prosecution under a new indictment for the same offense, and not as here, to a properly amended complaint timely filed. Thus, the original information was improperly quashed and amendment improperly disallowed.

For the foregoing reasons the order of the lower court quashing the informations is reversed and this case is remanded for trial on the merits.

JOHNSON, J., concurs in the result.