J-S28022-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JEFFERY JEROME MITCHELL, | |
| Appellant | No. 1266 MDA 2014 |

Appeal from the Judgment of Sentence entered February 27, 2013,
in the Court of Common Pleas of Lebanon County,
Criminal Division, at No(s): CP-38-CR-0001395-2012
and CP-38-CR-0000735-2012

BEFORE:    BOWES, ALLEN, and LAZARUS, JJ.

MEMORANDUM BY ALLEN, J.:                             **FILED MAY 14, 2015**

Jeffery Jerome Mitchell ("Appellant") appeals from the judgment of sentence imposed after a jury convicted him of one count of robbery and one count of terroristic threats at Docket No. 1395-2012, arising from a robbery of an M & T Bank that occurred on February 16, 2012; and convicted him of one count of robbery and one count of terroristic threats at Docket No 735-2012, arising from a second robbery of the same bank on March 1, 2012.[1]  We affirm.

The facts and procedural history regarding the February 16, 2012 robbery are as follows:

_____

[1] 18 Pa.C.S.A. § 3701(a)(1)(ii) and 2706(a)(1).

**Docket No. 1395-2012**

Margaret Bickle (hereinafter "Ms. Bickle") was employed at M & T Bank at the State Drive branch as a bank teller on February 16, 2012. A robbery occurred at this branch on this date around 3:30. Prior to the robbery, Ms. Bickle was looking out the drive-through window, and she saw a pair of legs coming through the hedges in a neighboring yard. A man then entered the bank. The man was wearing gray sweatpants, a blue sweatshirt, and a hat. A red bandana was tied around his face. The hat was a brown, knit hat with stripes. Three other employees and one customer were inside the bank at the time. When the man arrived at a teller window, he threw a black bag across the counter, and he told Ms. Bickle to "fill it up." When the man threw the bag, Ms. Bickle said that she just stood there like she was frozen, and she was looking at him eye to eye. The man repeated, "Fill it up. Fill it up." Ms. Bickle started to fill the bag. Every time he repeated "fill it up," his voice became more agitated.

Ms. Bickle's teller window was located at the drive-through, so she had to turn her back to fill up the bag. Ms. Bickle had a dye pack in her drawer, but she did not put it inside the bag because the man threatened her. Ms. Bickle testified, "...[H]e said if I put the dye pack in the bag I would die." When this was said, Ms. Bickle was scared. Ms. Bickle ultimately put money in the bag and gave it to him. The man took the bag and tried to leave the bank through doors that were locked. The man then turned around and exited the bank from the door he came in. Ms. Bickle then hit the silent alarm and called 911. The standard entry door was locked. Nobody was then permitted to enter the bank or use the drive-through.

While Ms. Bickle was on the phone, she looked out the window and saw the man go through the hedges again, and she noticed he went into an area where a church was located around State Drive and Horst Avenue. It appeared that he entered a car, but she lost sight of him. She then saw a dark colored vehicle leave the area of the church parking lot. She did not see the man actually get into the car.

Ms. Bickle testified that the robber's eyes were brown and big and the eyes made an impression on her. She believed he was African American and between 5 foot 8 and 5 foot 10. Although she did not get a good look at the man's face, the

- 2 -

man's eyes were very clear in her memory. Ms. Bickle identified [Appellant] as the man having those eyes.

Ms. Sheena Stoner (hereinafter "Ms. Stoner") was a teller on the date of the robbery. Ms. Stoner also testified that while she was waiting on a customer, a man entered the bank with a red bandana covering his face and a hat. He walked to the teller window beside her, threw a black bag on the counter, and told Ms. Bickle to fill it up. The man told her to hurry. The man's tone of voice was becoming more agitated. Ms. Stoner testified that the man told Ms. Bickle "no dye packs or you'll die, bitch." The man then attempted to exit through locked doors, but left the bank through the main doors. The man asked the customer, Kevin Madden (hereinafter "Mr. Madden") "if he had a problem with this." Ms. Stoner also noticed the man's eyes. Ms. Stoner observed that the man had something shiny on each of his fingertips, which looked like tape. Ms. Stoner also pushed the alarm, looked out the window, saw the man exit through the yard, but she could not see him anymore once he crossed State Drive.

Mr. Madden was the customer inside the bank when it was robbed. Mr. Madden also testified that when he was inside the bank, another person came in, gave a black bag to Ms. Bickle, and told her to "fill it up." He repeated "fill it up." Mr. Madden looked over and saw a red bandana over the person's face. As the teller proceeded to her drawer, the man told Ms. Bickle to "fill it up" and not to put a dye pack in the bag or "you die, bitch." The man then looked at Mr. Madden and asked him if he had a problem with this, to which Mr. Madden replied "no." Mr. Madden noticed that the tellers were getting nervous and anxious, so the one teller put the money in the bag and handed it back. After the man left, Mr. Madden saw him cross State Drive, but then he later lost sight.

Penny Mitchell (hereinafter "Ms. Mitchell") is the branch manager. She was not present at the branch on the date of the robbery, but she travelled to the branch after receiving a phone call. She determined that approximately $2,599.51 was taken.

Officer Wade Achey (hereinafter "Officer Achey"), of the South Lebanon Township Police Department, was the initial officer to respond to the bank. Upon contact with Ms. Bickle, she appeared upset and nervous. Mr. Madden seemed stunned. Chief Michael Lesher (hereinafter "Chief Lesher") and Sergeant

Kenneth Zimmerman (hereinafter "Sergeant Zimmerman") arrived at the bank. Sergeant Zimmerman found in a neighboring yard a red bandana and a brown and tan knit hat. On March 1, 2012, Sergeant Zimmerman made contact with the Appellant while the Appellant was smoking cigarettes. Once the Appellant discarded the cigarettes, three cigarette butts were obtained and packaged as evidence.

Christopher Johns (hereinafter "Mr. Johns") of the Pennsylvania State Police, is a forensic scientist in the serology section, and he identifies blood and body fluids. Mr. Johns was qualified as an expert to render opinion evidence in the area of forensic serology. Forensic testing was done on the bandana, which yielded positive testing for saliva. A portion of the bandana that had the saliva was sent to Greensburg, PA for DNA analysis. A cutting of the inside of the knit hat and the cigarette butts were also sent for DNA testing.

Angela Difiore (hereinafter "Ms. Difiore"), is a forensic DNA scientist at the State Police DNA lab in Greensburg, PA. Ms. Difiore was qualified as an expert to render opinion evidence in the area of DNA analysis. Ms. Difiore performed DNA testing on the knit hat and the bandana. These samples were compared to a sample from the cigarette butts. The ultimate result of the DNA testing was [that] Appellant was the only individual linked to both the red bandana and the hat.

Trial Court Opinion, 9/3/14, at 1-5 (citations to notes of testimony and footnote omitted).

A jury trial commenced on January 8, 2013, at the conclusion of which the jury found Appellant guilty of robbery and terroristic threats at Docket 1395-2012. On February 27, 2013, Judge Samuel Kline sentenced Appellant to 5½ to 15 years of imprisonment for robbery, and a concurrent 1 to 7 years of imprisonment for terroristic threats. No post-sentence motions were filed.

The facts and procedural history regarding the March 1, 2012 robbery are as follows:

[Appellant's] charges [of one count of robbery and one count of terroristic threats] stemmed from a bank robbery at the M & T Bank located at 903 State Drive, Lebanon County, Pennsylvania. On March 1, 2012, at approximately 3:00 p.m. a dark skinned male entered the bank wearing a trench coat, black knit hat, gloves, and a black mask covering his face. He approached a teller and displayed a silver semi-automatic handgun with black grips, and ordered the teller to give him large bills. He informed her "No dye packs or you die, bitch." The teller complied and turned over $2,627.00 to the man. The man exited and was followed by another bank employee. When outside the bank, two customers witnessed the events and followed the man as he entered a black four-door Dodge vehicle displaying Pennsylvania registration HSR-2528. The vehicle was registered to [Appellant].

Shortly thereafter, Sergeant Kenneth Zimmerman of the South Lebanon Township Police contacted the Lancaster County 911 Dispatch Center and requested that the vehicle be stopped and the occupants held, if they could be located. The vehicle was located by the Manheim Borough Police Department at the address listed on the registration. A short time later, [Appellant] entered the vehicle and was stopped by police. Upon Sergeant Zimmerman's arrival at the scene, the officers searched [Appellant's] vehicle. They also conducted a pat down search and discovered $2,511.00 in cash in [Appellant's] pockets.

***

A jury trial was held on February 4, 2013. At trial, [Appellant] was identified as the owner of the vehicle in which the man who robbed the bank fled. Two latex gloves and a five dollar bill were also recovered near the bank shortly after the robbery, and two black knit hats were removed from [Appellant's] vehicle. The gloves, along with cigarette butts smoked by [Appellant] at the police station, were submitted for DNA testing. The DNA on the gloves matched the DNA on [Appellant's] cigarette butts. Several witnesses testified that the

- 5 -

bank robber had big, dark, distinct eyes, and that [Appellant] had the same eyes.

Trial Court Opinion, 9/22/14, at 3-4, 8-9.

At the conclusion of the second trial, a jury found Appellant guilty of robbery and terroristic threats. Judge Bradford H. Charles convened a hearing on February 27, 2013, and sentenced Appellant to 6 to 15 years of imprisonment for robbery, and a concurrent 1 to 3 years for terroristic threats, for an aggregate sentence of 6 to 15 years of imprisonment to be served consecutive to the sentence imposed at Docket No. 1395-2012. No post-sentence motions were filed.

On April 9, 2013, Appellant filed untimely notices of appeal at both docket numbers, which he subsequently withdrew. On February 24, 2014, at both docket numbers, Appellant filed petitions pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq.,* seeking reinstatement of his direct appeal rights. Appellant's PCRA petitions were granted on June 27, 2014, and Appellant filed notices of appeal on July 23, 2014 at both dockets numbers. Appellant and the trial courts at both docket numbers have complied with Pa.R.A.P. 1925. Appellant's cases have been consolidated with this Court for review on appeal.

Appellant presents the following issues for our review:

1. WHETHER [APPELLANT] WAS DENIED A FAIR TRIAL WHEN HE ADVISED [THE] TRIAL COURT THAT HE HAD A CONFLICT WITH APPOINTED COUNSEL, AND [THE] TRIAL COURT REFUSED TO GRANT NEW COUNSEL TO REPRESENT HIM?

2. WHETHER THERE WAS INSUFFICIENT EVIDENCE TO CONVICT [APPELLANT] OF ROBBERY AND TERRORISTIC THREATS?

    3. WHETHER THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE PRESENTED DURING TRIAL?

Appellant's Brief at 5.

In his first issue, Appellant argues that he was denied fair trials when he advised the trial courts in both the Docket No. 1395-2012 and Docket No. 735-2012 proceedings that he had a conflict with his court-appointed counsel, Mr. Nicholas Sidlenick, and the trial court in both instances declined to appoint new counsel to represent Appellant. Appellant's Brief at 9-10. Appellant complains that prior to both of his trials, he requested new counsel because he felt that Mr. Sidlenick failed to adequately communicate with him and keep him apprised of his case status, and believed that Mr. Sidlenick was unprepared to proceed to trial. *Id*. Appellant asserts that given his conflict with counsel, the trial court erred in denying his request to appoint new counsel. *Id*.

Our courts have made clear that "[t]he right to counsel is guaranteed by both the Sixth Amendment to the United States Constitution and by Article I, Section 9 of the Pennsylvania Constitution." ***Commonwealth v. Antidormi***, 84 A.3d 736, 746, n.8. (Pa. Super. 2014) (citations and internal quotations omitted). However, "the right to counsel does not include the right to counsel of one's choice." ***Commonwealth v. Philistin***, 53 A.3d 1, 16 (Pa. 2012).

Pa.R.Crim.P. Rule 122(C) provides:

A motion for change of counsel by a defendant for whom counsel has been appointed shall not be granted except for substantial reasons.

"To satisfy this standard, a defendant must demonstrate he has an irreconcilable difference with counsel that precludes counsel from representing him. The decision whether to appoint new counsel lies within the trial court's sound discretion." *Commonwealth v. Wright*, 961 A.2d 119, 134 (Pa. 2008). This Court has held that, without more, "irreconcilable differences warranting appointment of new counsel are not established where the defendant merely alleges a strained relationship with counsel, where there is a difference of opinion in trial strategy, where the defendant lacks confidence in counsel's ability, or where there is brevity of pretrial communications." *Commonwealth v. Floyd*, 937 A.2d 494, 497 (Pa. Super. 2007) (citations and internal quotations omitted). "Neither the Rules of Criminal Procedure nor our case law requires a defendant be afforded a hearing every time he requests a change of counsel, and [our Supreme Court has] decline[d] to impose such a requirement." *Commonwealth v. Keaton*, 45 A.3d 1050, 1071 (Pa. 2012).

Here, the record reflects that Mr. Sidlenick entered his appearance at Docket No. 735-2012 on June 5, 2012. On September 10, 2012, Appellant filed a *pro se* letter to Mr. Sidlenick stating that he had received the discovery materials that Mr. Sidlenick had sent him, and requested Mr. Sidlenick to secure an expert in DNA analysis, and additionally instructed Mr. Sidlenick not to ask for any more continuances without first consulting

Appellant. Letter from Appellant, 9/10/12. Nine days later, on September 19, 2012, Appellant filed another letter requesting additional discovery materials including video and audio recordings and photographic evidence. Letter from Appellant, 9/19/12.

On September 27, 2012, Mr. Sidlenick appeared before the trial court for Appellant's preliminary hearing at Docket No. 1395-2012, although he did not formally enter his appearance until October 1, 2012. On October 9, 2012, Appellant filed a letter thanking Mr. Sidlenick for "the good job you did at the preliminary hearing," and indicating a desire to meet with Mr. Sidlenick that week to discuss obtaining an expert witness and the possibility of suppressing DNA evidence. Letter from Appellant, 10/9/2012.

On October 15, 2012, Appellant, at both docket numbers, filed identical letters to Judge Tylwalk, stating that Mr. Sidlenick had failed to satisfactorily meet with him and correspond with him to discuss trial strategy, that Mr. Sidlenick was unprepared to proceed to trial, and generally expressing dissatisfaction with Mr. Sidlenick's representation. Letter from Appellant, 10/15/12. On November 28, 2012, Appellant once again filed identical letters at both docket numbers stating that Mr. Sidlenick had failed to correspond with him. Letter from Appellant, 11/28/12. That same day, Appellant filed a *pro se* motion seeking the dismissal of Mr. Sidlenick and the appointment of new counsel. **See** "Motion to Appoint Conflict Counsel," 11/28/12. On November 30, 2012, the Clerk of Courts entered memoranda at both docket numbers indicating that since Appellant

was still represented by counsel, his motion would be forwarded to Mr. Sidlenick.

On December 19, 2012, Judge Charles T. Jones scheduled a hearing on a motion filed by the Commonwealth to consolidate Appellant's cases. Mr. Sidlenick appeared on Appellant's behalf and successfully contested the motion, contending that consolidation would cause Appellant undue prejudice. Accordingly, the trial court denied the Commonwealth's motion to consolidate. Order, 12/19/12

The following day, December 20, 2012, Appellant and Mr. Sidlenick appeared before Judge Jones for a "call of the list" hearing at Docket No. 1395-2012, at which the trial court permitted Appellant the opportunity to be heard regarding his conflict with counsel. Appellant informed the trial court that "Mr. Sidlenick doesn't communicate with me," that Mr. Sidlenick was not competent, and that he had failed to diligently represent Appellant. N.T., 10/20/12, at 2-3.

The trial court noted that the previous day, Mr. Sidlenick had succeeded in preventing the Commonwealth from consolidating Appellant's cases for trial to protect Appellant from any undue prejudice, as an example of Mr. Sidlenick's competent representation. *Id*. at 3. Moreover, in response to Appellant's complaints that Mr. Sidlenick had failed to adequately meet with him, the trial court stated that it would "direct Attorney Sidlenick to see you as often as you would like" and declined to appoint new counsel to represent Appellant. *Id*.

On January 8, 2013, the jury trial at Docket No. 1395-2012 commenced before Judge Kline, at the conclusion of which the trial court asked Appellant, "[a]re you satisfied with Attorney Sidlenick and the way that he has represented you?" and Appellant responded "yeah." N.T., 1/8/13, at 196. No additional proceedings were conducted with regard to Appellant's request for new counsel at either docket number. On February 6, 2012, a jury trial commenced at Docket No. 795-2012, with Mr. Sidlenick continuing to represent Appellant.

Upon careful review of the record, we find no abuse of discretion in the trial court's decision to deny Appellant's request for new counsel. Appellant himself acknowledged in his filed letters that Mr. Sidlenick did a "good job" representing him in pre-trial proceedings, and that Mr. Sidlenick responded to Appellant's requests for various discovery materials. **See** Appellant's Letters, 9/10/12; 10/9/2012. Moreover, as Judge Jones noted, Mr. Sidlenick successfully represented Appellant at the hearing on the Commonwealth's motion to consolidate. Also, any deficiencies in communication between Appellant and his counsel were corrected when Judge Jones directed Mr. Sidlenick to communicate with Appellant as often as Appellant desired. Although Appellant contended that Mr. Sidlenick was incompetent because he failed to pursue Appellant's request for an expert DNA witness, our courts have generally accepted that there are certain decisions which are "for defense counsel" and "[t]he decisions of what witnesses to call, whether and how to conduct cross-examination, what jurors to accept or strike, what trial

motions should be made, and all other strategic and tactical trial decisions are within the exclusive province of the lawyer after consultation with his client." *Commonwealth v. Volk*, 444 A.2d 1182, 1184 (Pa. Super. 1982) *citing* American Bar Association Standards for Criminal Justice Relating to the Defense Function[2]; *Commonwealth v. Witherspoon*, 392 A.2d 1313, 1315 (Pa. 1978); *Commonwealth v. Bell*, 276 A.2d 834, 837 (Pa. 1971) ("These standards recognize the importance of defense counsel in our judicial system [who] is appointed to protect the interests of the accused."). Accordingly, we find no error in the trial court's determination that Appellant failed to demonstrate irreconcilable differences with Mr. Sidlenick that

---

[2] *See* STANDARD 4-5.2 CONTROL AND DIRECTION OF THE CASE, ABA Standards for Criminal Justice 4-5.2 (3d ed. 1993)

> (a)  Certain decisions relating to the conduct of the case are ultimately for the accused and others are ultimately for defense counsel.  The decisions which are to be made by the accused after full consultation with counsel include:
>
> > (i)    what pleas to enter;
> > (ii)   whether to accept a plea agreement;
> > (iii)  whether to waive jury trial;
> > (iv)   whether to testify in his or her own behalf; and
> > (v)    whether to appeal.
>
> (b)  Strategic and tactical decisions should be made by defense counsel after consultation with the client where feasible and appropriate.  Such decisions include what witnesses to call, whether and how to conduct cross-examination, what jurors to accept or strike, what trial motions should be made, and what evidence should be introduced.

precluded Mr. Sidlenick from representing him, and that substantial reasons did not exist for the appointment of new counsel.

Appellant next argues that the evidence was insufficient to sustain his convictions. Appellant's Brief at 11-13. "Questions of evidentiary sufficiency present questions of law; thus, our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Stephens**, 74 A.3d 1034, 1038 (Pa. Super. 2013) (citations omitted). When reviewing a challenge to the sufficiency of the evidence, we are bound by the following:

> We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.
>
> The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

**Commonwealth v. Tarrach**, 42 A.3d 342, 345 (Pa. Super. 2012).

Appellant was found guilty of one count each of robbery and terroristic threats at both docket numbers. To sustain the conviction for robbery, the Commonwealth was required to demonstrate that Appellant, in the course of committing a theft, threatened another with or intentionally put him in fear

- 13 -

of immediate serious bodily injury. 18 Pa.C.S.A. § 3701(a)(1)(ii). To sustain the conviction for terroristic threats, the Commonwealth was required to demonstrate that Appellant communicated, either directly or indirectly, a threat to commit any crime of violence with the intent to terrorize another. 18 Pa.C.S.A. § 2706(a)(1)

At Docket No. 1395-2012, the trial court explained why the evidence was sufficient to sustain Appellant's convictions as follows:

> [T]wo bank tellers and one customer all testified that a man, who was wearing a knit hat and a bandana over his face, entered the bank, went up to one of the bank tellers, threw a bag to her, and told her multiple times to "fill it up." Each time he repeated "fill it up" he sounded more agitated. Ms. Bickle testified that she was scared because he threatened her by telling her that she would die if she put a dye pack in the bag. Ms. Stoner and Mr. Madden corroborated this testimony by stating that the man told Ms. Bickle not to put any dye packs in the bag or "you die, bitch."
>
> Although there may not have been a direct identification of the robber's face because it was covered by a bandana, Ms. Bickle testified that when the man threw the bag, she froze, and she stared at his eyes. The robber's eyes made an impression on her. Ms. Bickle identified the Appellant at trial as the man having those eyes. DNA testing was performed on portions of the bandana and the knit hat. Ms. Difiore testified that the Appellant was the only individual she was able to link to both the red bandana and the knit hat based on her testing. Accordingly, there was sufficient evidence for the jury to conclude that [Appellant] in the course of committing a theft threatened another with or intentionally put one of the witnesses in fear of immediate serious bodily injury

Trial Court Opinion, 9/3/14, at 11-12.

Upon review of the record, and considering the aforementioned evidence in the light most favorable to the Commonwealth as the verdict

winner, we agree with the trial court that this evidence was sufficient to support Appellant's convictions for robbery and terroristic threats at Docket No. 1395-2012.

At Docket No. 735-2012, the trial court explained:

[A]mple evidence was presented at trial for the jury to identify [Appellant] as the individual who robbed M & T Bank and threatened the bank tellers with a hand gun. Though most of [Appellant's] face was covered, several of the tellers were able to identify the robber's distinct eyes as those of [Appellant]. Each testified that the robber carried a handgun, and bank teller Sheena Stoner testified that the robber stated, "No dye packs or you die, bitch." A witness followed the assailant and recorded the license plate number on his vehicle. Police learned that the vehicle was registered to [Appellant].

Police also located rubber gloves outside of the bank similar to those that the bank robber was wearing. A subsequent DNA test against cigarette butts that [Appellant] smoked at the police station indicated the presence of Appellant's DNA on the gloves. The DNA report indicates that [Appellant] was a major contributor to the DNA present on at least one of the gloves, and that the probability of randomly selecting a person with the same DNA present on the glove is approximately 1 in 50 quadrillion in the Caucasian population; 1 in 860 quadrillion in the African American population; and 1 in 18 quadrillion in the Hispanic population.

Hours after the bank robbery, the vehicle in which the bank robber fled was located in Manheim, and officers witnessed [Appellant] attempt to enter the vehicle. [Appellant] was stopped, and his pockets searched. Officers located $2511.00 in cash on [Appellant's] person. This is significant, considering that the bank alleged that they turned over $2,627.00 to the bank robber. The vehicle was also searched, and the officers located two dark colored knit hats from the vehicle similar to those worn by the bank robber.

***

- 15 -

> All of the evidence, taken together, was sufficient to prove [Appellant's] guilt beyond a reasonable doubt.

Trial Court Opinion, 9/22/14, at 12-14.

Again, viewing the evidence admitted at trial, and all reasonable inferences drawn therefrom, in a light most favorable to the Commonwealth as verdict winner, we find no error in the trial court's determination that the evidence was sufficient to support Appellant's convictions at Docket No 735-2012 beyond a reasonable doubt. Appellant's challenges to the sufficiency of the evidence at both dockets fails.

In his final issue, Appellant argues that the verdicts at both docket numbers were against the weight of the evidence. "[A] weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing. Pa.R.Crim.P. 607. Failure to properly preserve the claim will result in waiver, even if the trial court addresses the issue in its opinion." *Commonwealth v. Thompson*, 93 A.3d 478, 490 (Pa. Super. 2014) (citations omitted). Here, Appellant failed to raise a weight of the evidence claim in a post-sentence motion; thus the claim is waived.

Although we find Appellant's issues to be either meritless or waived, and therefore affirm his convictions, our review of the record reflects that at Docket No. 735-2012, on February 19, 2013, the Commonwealth filed a notice of intent to seek the mandatory minimum pursuant to 42 Pa.C.S.A. § 9712(a) (sentences for offenses committed with firearms). At trial, when the jury rendered its verdicts, the jury was asked to separately determine

whether it found beyond a reasonable doubt that Appellant had displayed a firearm, for purposes of determining whether the mandatory minimum sentence under § 9712 applied. **See** Verdict Sheet, 2/6/13. At the Docket No. 735-2012 sentencing hearing, prior to the trial court's imposition of sentence, Appellant's counsel recognized that "there's … a 5 year mandatory" applicable to Appellant pursuant to § 9712, and the trial court proceeded to sentence Appellant to 6 to 15 years of imprisonment for robbery. N.T., 2/27/13 at 2, 12.

In **Commonwealth v. Valentine** 105 A.3d 13 (Pa. Super. 2014), we concluded that § 9712 is unconstitutional on its face in light of **Alleyne v. United States**, 133 S.Ct. 2151 (2013). Because § 9712 has been held to be unconstitutional, and the record reflects that the trial court was asked to consider § 9712 in its sentencing determination at Docket No. 735-2012, we are constrained to remand at Docket No 735-2012 to the trial court for re-sentencing.[3] **Valentine, supra** (concluding that § 9712 is facially unconstitutional); **Commonwealth v. Vargas**, --- A.3d ----, 2014 WL 7447678 (Pa. Super. 2014); **Commonwealth v. Newman**, 99 A.3d 86 (Pa. Super. 2014) (*en banc*) (applying **Alleyne** and its progeny retroactively).

---

[3] Although Appellant has not raised this issue, "we are empowered, if not compelled", to address it *sua sponte*. **Commonwealth v. Donahue**, 516 A.2d 373, 374 (Pa. Super. 1986) (citation omitted); **see also Commonwealth v. Wolfe**, --- A.3d ----, 2014 WL 7331915, Pa. Super. 2014 (a challenge to the legality of a sentence can never be waived and may be raised by the reviewing court *sua sponte*).

We recognize that at trial, the jury as fact finder made a separate and specific factual determination that Appellant visibly displayed a gun, which would appear to comport with the requirements of **Alleyne** that the factual prerequisites of the mandatory minimum sentence be decided by the finder of fact beyond a reasonable doubt. However, in **Valentine**, we made clear that the unconstitutional provisions of § 9712 were not severable, but "essentially and inseparably connected" to the rest of the statute, thereby rendering the statute unconstitutional as a whole. In both **Newman** and **Valentine**, we rejected efforts by the Commonwealth and trial courts to create new procedures to impose mandatory minimum sentences in compliance with **Alleyne**. **See Newman**, 99 A.3d at 101 (rejecting Commonwealth's request for remand for the empanelling of a sentencing jury "for the determination, beyond a reasonable doubt, as to whether the conditions obtain under the evidence such that a mandatory minimum sentence should be imposed"); **Valentine,** 101 A.3d at 801 (rejecting Commonwealth's effort to comply with **Alleyne** by asking the jury, on the verdict slip, to determine beyond a reasonable doubt whether Appellant possessed a firearm that placed the victim in fear of immediate serious bodily injury in the course of committing a theft for purposes of the mandatory minimum sentencing provisions of 42 Pa.C.S.A. § 9712(a), and whether the crime occurred in whole or in part at or near public transportation, for purposes of the mandatory minimum sentencing

provisions of 42 Pa.C.S.A. § 9713(a)); *Commonwealth v. Fennell,* 105 A.3d 13 (Pa. Super. 2014).

Similarly, in this case, the requirements of *Alleyne* cannot be circumvented by presenting to the jury for determination beyond a reasonable doubt whether Appellant visibly possessed the firearm. *Valentine, supra*. Because § 9712 is unconstitutional in its entirety, a mandatory minimum sentence imposed under this statute is illegal, such that remand is warranted.

We discern no reason to remand for re-sentencing at Docket No. 1395-2012, as the record does not indicate that any mandatory minimum sentencing provisions since deemed unconstitutional were applied, particularly given that Appellant did not display a handgun in the course of that robbery. Moreover, Appellant's sentencing hearing before Judge Kline at Docket No. 1395-2012 occurred *prior to* the sentencing hearing at Docket No. 735-2012 before Judge Charles, and without consideration of the sentence imposed at Docket No. 735-2012. Therefore, our remand for re-sentencing at Docket No 735-2012 would not disturb the overall sentencing scheme applied at Docket No. 1395-2012. *See Commonwealth v. Goldhammer*, 512 Pa. 587, 517 A.2d 1280 (1986), *cert. denied*, 480 U.S. 950, 107 S.Ct. 1613, 94 L.Ed.2d 798 (1987)) (stating if appellate court alters overall sentencing scheme, then remand for re-sentencing is proper).

Given the foregoing, we affirm Appellant's convictions at both dockets, and affirm Appellant's judgment of sentence at Docket No. 1395-2012. However, we are constrained to vacate Appellant's judgment of sentence at Docket No. 735-2012 and remand for re-sentencing.

Convictions affirmed. Judgment of sentence at Docket 1395-2012 affirmed. Judgement of sentence at Docket No. 735-2012 vacated and remanded for re-sentencing without the application of the mandatory minimum prescribed in 42 Pa.C.S.A. § 9712. Jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/14/2015